# EXHIBIT A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| COULAS VIKING PARTNERS,<br>an Illinois General Partnership, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 2013-CH-28409 |
| vs. | ) ) | Honorable Mary L. Mikva |
| THE BELT RAILWAY COMPANY OF<br>CHICAGO, an Illinois Corporation, | ) ) | |
| Defendant. | ) ) | |

## BELT RAILWAY COMPANY OF CHICAGO'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DECLARATORY, INJUNCTIVE AND OTHER RELIEF

NOW COMES the defendant, Belt Railway Company of Chicago ("**Belt**"), by and through its attorneys, and for its Answer and Affirmative Defenses to the Second Amended Complaint for Declaratory, Injunctive and Other Relief ("**SAC**") of Coulas Viking Partners, an Illinois General Partnership (the "**Plaintiff**"), states as follows:

1.      Viking Partners brings this Complaint against Defendant Belt Railway for its unauthorized and wrongful use of Viking Partners' property, as well as for damages from Belt Railway's past and continuing trespass upon that property. Belt Railway's wrongful use and trespass has prevented and continues to prevent Viking Partners from enjoying the full benefits of its ownership of the property, including using, developing or selling it. Viking Partners seeks declaratory and injunctive relief to declare that Belt Railway does not possess any rights to use Viking Partners' property, and to enjoin Defendant's wrongful use and trespass of that property. Viking Partners also seeks an award for the damages it has suffered as a result of that wrongful conduct.

**ANSWER:**   Belt admits that Plaintiff has filed the SAC and denies all allegations alleging any wrongful conduct by Belt and any resulting damages and impact on Plaintiff.

## PARTIES

2.      Viking Partners is an Illinois general partnership with its principal place of business in Chicago, Illinois. Viking Partners owns and holds title in fee simple to the property at issue in this case, as well as adjacent property. All the property is located in Argo, Illinois, in the

County of Cook, Illinois.

**ANSWER:**   Belt does not have sufficient knowledge to form a belief as to the truth or

falsity of these allegations and demands strict proof of all such allegations.

3.     Defendant Belt Railway is an Illinois corporation with its principal place of
business in Bedford Park, Illinois. Belt Railway is an "intermediate switching terminal" railroad.

**ANSWER:**   Admitted.

## JURISDICTION & VENUE

4.     Jurisdiction is proper in this Court pursuant to 735 ILCS 5/2-209 as Defendant
Belt Railway is a corporation doing business in Illinois and has committed torts in Illinois.
Further, jurisdiction is proper in this Court pursuant to 735 ILCS 5/6-108 because the property in
question is located in Cook County.

**ANSWER:**   Belt admits that it is a corporation doing business in Illinois, denies that it

has committed any wrongful act, including any torts, denies that there is any proper basis for this

lawsuit, and states that the remaining allegations constitute legal conclusions, not factual

allegations, and therefore no answer is required.  If any answer is required, denied.

5.     Venue is proper in this Court pursuant to 735 ILCS 5/2-101 as Defendant Belt
Railway is a resident of Cook County, Illinois and its principal place of business is in Cook
County.

**ANSWER:**   Belt denies that it has committed any wrongful act, including any torts,

denies that there is any proper basis for this lawsuit, and states that the remaining allegations

constitute legal conclusions, not factual allegations, and therefore no answer is required.

## FACTS
### Viking Partners' Property

6.     Viking Partners owns various parcels of property.  Those parcels total
approximately 36 acres.  Among the parcels owned by Viking Partners is property upon which a
railroad track is built, adjacent to undeveloped land to the south and west of the track and
adjacent to developed land to the southeast of the track (**"Viking Property"**).  The legal
description of the Viking Property is attached as Exhibit A.  Viking Partners also owns adjacent
parcels to the north and to the east of the Viking Property that are developed.

**ANSWER:**   Belt does not have sufficient knowledge to form a belief as to the truth or

falsity of these allegations and demands strict proof of all such allegations, which answer is

incorporated into every answer below where these allegations and/or defined term is utilized.

7.     To the northwest of the Viking Property is a large manufacturing and business facility owned and operated by Ingredion Inc., formerly known as Corn Products Manufacturing Company (**"Corn Products"**).

**ANSWER:**   Belt admits that there is a large manufacturing and business facility owned

and operated by Ingredion Inc., formerly Corn Products Manufacturing Company, in the vicinity

of Belt's railroad tracks.

8.     Prior to the time Viking Partners owned the Viking Property, a single railroad track was built upon the Viking Property. The railroad track built upon the Viking Property is used as a spur line (**"Spur Line"**) to connect the Corn Products manufacturing facility to a nearby large railway yard (**"Railway Yard"**). The Railway Yard is a switching and terminal point that serves a number of different railroads, and in which a great number of railroad track lines come together and are interconnected.

**ANSWER:**   Belt does not have sufficient knowledge to form a belief as to the truth or

falsity of these allegations with respect to Plaintiff's ownership of the Viking Property and

demands strict proof.   Belt admits that there exists a railroad track used as a spur line that

connects the so-called Corn Products manufacturing facility to a nearby railway yard, which yard

is a switching and terminal point for different railroads.   Belt admits that a number of tracks

come together in that yard.   The remaining allegations are denied.

9.     The Spur Line is presently used by Belt Railway to move railroad cars to and from the Railway Yard to Corn Products. Belt Railway also stores railroad cars on the Spur Line by parking them for hours at a time.

**ANSWER:**   Belt admits the allegations in the first sentence of paragraph 9 but denies

the allegations in the second sentence.

10.     Viking Partners leases all the property it owns on South Harlem Avenue, including the Viking Property, to Weldbend Corporation (**"Weldbend"**). Weldbend owns and operates a business and manufacturing facility and is engaged in the business of selling carbon steel weld fitting and weld flange products. Weldbend's president and CEO is James J. Coulas, Jr. Various members of the Coulas family are also involved in the management of Viking Partners.

**ANSWER:** Belt does not have sufficient knowledge to form a belief as to the truth or falsity of these allegations and demands strict proof of all such allegations.

11. The Spur Line divides the property owned by Viking Partners into two parts: one a large parcel upon which is located the Weldbend manufacturing and storage operations (**"Developed Parcel"**), and largely undeveloped parcel (**"Undeveloped Parcel"**) which neither Viking Partners nor its lessee, Weldbend, can develop or make reasonable use of because of Belt Railway's wrongful actions.

**ANSWER:** Belt denies that is has committed any wrongful actions, denies that its proper use of its rights and Spur Line has interfered with any development or use of any real estate adjacent to the Spur Line, denies any development potential, and states that it does not have sufficient knowledge to form a belief as to the truth or falsity of these allegations as to Plaintiff's alleged ownership of the Viking Property and demands strict proof, which answer is incorporated into each answer below where these allegations and/or defined terms are utilized.

12. The Viking Property, including the Undeveloped Parcel, was acquired by James J. Coulas, Sr. on November 30, 1981. The Estate of James J. Coulas, Sr. transferred a one half interest in the Viking Property to Viking Partners on January 8, 2008. The remaining one half interest in the Viking Property was transferred to Viking Partners on December 1, 2009.

**ANSWER:** Belt does not have sufficient knowledge with which to form a belief as to the truth or falsity of these allegations, demands strict proof, which answer is incorporated into all below answers where these allegations are utilized.

### Defendant's Non-Permissive Use of the Spur Line

13. Belt Railway has used and continues to use the Spur Line on an almost daily basis. Belt Railway's use and operation of the Spur Line is done without the permission of Viking Partners. Belt Railway does not have any right, title or consent from Viking Partners or any of its predecessors in title that permit it to use the Viking Property.

**ANSWER:** Belt admits the first sentence of paragraph 13 and denies the remainder of paragraph 13.

14. The Spur Line prevents Viking Partners or Weldbend from enjoying the benefits of the Undeveloped Parcel. The Spur Line is below grade at certain points. Thus, there is no practical way to cross over the Spur Line. There is not a bridge or underpass that would allow

Viking Partners or Weldbend to cross the Spur Line and access the Undeveloped Parcel. It is not feasible, given the location of the Spur Line, to construct either a bridge or an underpass. The only way to access the Undeveloped Parcel that would allow Viking Partners or Weldbend the full benefits of the parcel is from land that is owned by neither Viking Partners nor Weldbend.

**ANSWER:** Belt denies paragraph 14.

15. Despite having title to, and being responsible for, property taxes on the Viking Property, Viking Partners is unable to enjoy the full benefits of its ownership of the Undeveloped Parcel. Further, because the Undeveloped Parcel is inaccessible from any public property, the value of the Undeveloped Parcel to any potential purchaser is diminished and/or destroyed.

**ANSWER:** Belt denies paragraph 15.

<u>**Easements Affecting the Viking Property**</u>

16. In November 1909, Chicago Title and Trust Company (**"Chicago Trust"**) owned and was the title holder of the Viking Property. The chain of title to the Viking Property ultimately passed from Chicago Trust to Viking Partners, through a number of successors to Chicago Trust.

**ANSWER:** Belt neither admits nor denies the allegations in paragraph 16, as it is

without sufficient knowledge as what real estate is included in the defined term Viking Property

or alleged chain of title passing to Plaintiff and demands strict proof thereof.

17. On November 9, 1909, Chicago Trust entered into an agreement (**"1909 Agreement"**) with Corn Products, granting an easement to Corn Products on the Viking Property (**"Easement"**). The Easement was granted to Corn Products for the construction, maintenance, and operation of the Spur Line on the Viking Property. The 1909 Agreement was recorded with the Cook County Recorder of Deeds as Document No. 5158174. A true and correct copy of the 1909 Agreement is attached as Exhibit B.

**ANSWER:** The subject document speaks for itself and Belt therefore denies all

allegations contained in paragraph 17 that are inconsistent with that document.

18. The 1909 Agreement expressly stated that Corn Products could assign the Easement to only Chicago Peoria Western Railway Company (**"CPW"**) and to no other party. The 1909 Agreement expressly prohibited CPW from assigning the Easement to any other party without Chicago Trust's consent. This prohibition against an assignment had only one exception: CPW could assign the Easement back to Corn Products. *See* Exhibit B, 119.

**ANSWER:** The subject document speaks for itself and Belt therefore denies all

allegations contained in paragraph 18 that are inconsistent with that document.

19.     The 1909 Agreement further stated that if any other assignment occurred other than to CPW or Corn Products without Chicago Trust's consent, **the** Easement granted **"shall** cease." Exhibit B, ¶ 9.

**ANSWER:**     The subject document speaks for itself and Belt therefore denies all allegations contained in paragraph 19 that are inconsistent with that document.

20.     Pursuant to the express language of the 1909 Agreement, therefore, any assignment of the Easement occurring without the consent of Chicago Trust or its successors is invalid, and the Easement created by the 1909 Agreement is terminated. *See* Exhibit B, ¶ 9. Upon that event, the 1909 Agreement expressly granted Chicago Trust the right, at its election, to require the removal of the Spur Line railroad tracks from the Easement. *See id.*

**ANSWER:**     The subject document speaks for itself and Belt therefore denies all allegations contained in paragraph 20 that are inconsistent with that document. The remainder of Paragraph 20 merely states legal conclusions, to which no response is required; to the extent an answer is required, Belt denies the same.

21.     Corn Products did, in fact, assign the Easement to CPW pursuant to a separate written agreement entered into on the same day as the 1909 Agreement ("CPW Assignment Agreement"). The CPW Assignment Agreement was also recorded with the Cook County Recorder of Deeds as Document No. 5158175. A true and correct copy of the CPW Assignment Agreement is attached as Exhibit C.

**ANSWER:**     The subject document speaks for itself and Belt therefore denies all allegations contained in paragraph 21 that are inconsistent with that document.

22.     At no time following the execution of the 1909 Agreement or the CPW Assignment Agreement did Chicago Trust or any successor owner of the Viking Property ever consent to a further assignment of the Easement. Further, at no time did Chicago Trust or any successor owners consent to an assignment of the Easement to Belt Railway.

**ANSWER:**     The subject documents speak for themselves and Belt therefore denies all allegations contained in paragraph 22 that are inconsistent with such documents.  The remaining allegations are denied.

23.     In 1912, an attempt was made to assign the 1909 Easement to Chicago and Western Indiana Railroad Company. However, the title holder of the property upon which the Spur Line was built did not consent to the assignment. Therefore, the assignment was invalid, null and void. In addition, under the 1909 Agreement, the Easement terminated.

**ANSWER:** The subject documents speak for themselves and Belt therefore denies all allegations contained in paragraph 23 that are inconsistent with such documents. The third and fourth sentences constitute legal conclusions, not factual allegations, and therefore no answer is required. If an answer is required, denied. The remaining allegations are denied.

24. Following the execution of the 1909 Agreement and the CPW Assignment Agreement, other agreements and/or deeds related to the Viking Property or adjacent property were executed in 1910, 1912, 1914, 1929 and 1962. True and correct copies of the 1910, 1912, 1914, and 1929 Agreements (each referred to further as "[YEAR] Agreement"), and the 1962 Deed are attached as Exhibits D, E, F, G and H, respectively. None of those Agreements, or any other agreements written or oral, changed and/or modified the rights of the owners of the Viking Property under the 1909 Agreement, including Viking Partners and its predecessors. None of those Agreements terminated the right of consent established in that 1909 Agreement and which was required to validly transfer the Easement to a third party.

**ANSWER:** The subject documents speak for themselves and Belt therefore denies all allegations contained in paragraph 24 that are inconsistent with such documents. As far as the second sentence, the allegations constitute legal conclusions, not factual allegations, therefore, no answer is required. If an answer is required, denied. The remaining allegations are denied.

25. The 1910 Agreement, the 1914 Agreement and the 1929 Agreement were never recorded with the Cook County Recorder of Deeds. In fact, those Agreements remain unrecorded as of today, though Belt Railway has for many years been represented by counsel including its present counsel.

**ANSWER:** Admitted.

26. There is no agreement or deed that grants Belt Railway an easement or a right to use the Viking Property to own or operate the Spur Line that is built upon the Viking Property. Further, there is no contract or agreement between Viking Partners and Belt Railway that grants Belt Railway a right to use the Viking Property to own or operate the Spur Line that is built upon the Viking Property.

**ANSWER:** Belt denies paragraph 26.

27. As of January 2008 and December 2009, when Viking Partners had acquired all of the Viking Property, the Easement had been terminated: the 1909 Agreement and CPW Assignment Agreement had been recorded, a proscribed assignment had been attempted and no consent had been given and none recorded. Any subsequent assignment to Belt Railway was invalid and of no effect. Thus, Viking Partners had actual notice of the termination of the Easement. Further, there was no written agreement nor was there any evidence of any consent

ever granted of a further assignment of which Viking Partners was aware.

**ANSWER:** Belt denies paragraph 27. In addition, the allegations constitute legal conclusions, not factual allegations, therefore, no answer is required. If an answer is required, denied.

28. Following the termination of the Easement, Belt Railway's use of the Viking Property upon which its Spur Line is built was entirely permissive. This was confirmed by recorded documents and from correspondence from Belt Railway. Belt Railway had no legal interest in any easement for the Viking Property. Thus, when Viking Partners acquired the Viking Property, the use by Belt Railway of the Spur Line was entirely permissive.

**ANSWER:** Belt denies paragraph 28.

29. The 1914 Agreement does not grant Belt Railway any rights to use the property owned by Viking Partners. The 1914 Agreement was not recorded when Viking Partners acquired its Property, and in fact has not been recorded even as of today. The language in the 1914 Agreement of a "right in perpetuity to use" the Spur line does not create any rights that Belt Railway can assert against Viking Partners. Viking Partners took the Viking Property without actual notice of the purported easement in the 1914 Agreement and without constructive notice that any such easement existed. Even if the unrecorded 1914 Agreement creates some kind of easement or some type of rights in favor of Belt Railway, which it does not, Belt Railway has breached whatever rights it claims by storing its railroad cars on the Spur Line.

**ANSWER:** The subject documents speak for themselves and Belt therefore denies all allegations contained in paragraph 29 that are inconsistent with such documents. The remaining allegations, except for the second sentence, are denied.

30. As early as August 2006, Weldbend, acting on behalf of then-owner James J. Coulas, Sr., offered Belt Railway an easement for use of the Spur Line. When Viking Partners acquired ownership of the property, it continued discussions with Belt Railway regarding creation of an easement, acting through Weldbend. Viking Partners' offer included terms that would have allowed Belt Railway to use the Spur Line that was built upon the Viking Property and in exchange compensate Viking Partners for that use. Belt Railway refused to enter into such an easement agreement.

**ANSWER:** Belt admits that it refused to enter into an easement agreements after 2006 and denies the remaining allegations in paragraph 30.

31. Given Belt Railway's refusal to enter into an easement agreement, Viking Partners sent to Belt Railway a letter, dated September 11, 2009, stating that its permissive use of the Spur Line would be withdrawn as of November 1, 2009. Belt Railway was, therefore, put on

notice that as of November 1, 2009, any permission previously granted, if any, to Belt Railway to make use of the Viking Property to own and operate the Spur Line was withdrawn. A true and correct copy of the September 11, 2009 Notice is attached as Exhibit I.

      **ANSWER:**     Belt denies paragraph 31.

     32.    Belt Railway's use of the Viking Property to own and operate a Spur Line is not, and has not been, done pursuant to a claim or title that is inconsistent with that possessed and owned by Viking Partners, which holds actual title to the Viking Property. Further, Belt Railway's use of the Viking Property to own or operate a Spur Line is not, and has not been, pursuant to a claim or title to the Viking Property that is inconsistent with the claim or title of any prior owner of the Viking Property.

      **ANSWER:**     Belt denies paragraph 32.

     33.    Belt Railway has used the Viking Property without permission or a claim of title that is inconsistent with that of Viking Partners or its predecessor in title, for the required statutory period of 20 years. Belt Railway has not acquired a prescriptive easement for use of the Viking Property.

      **ANSWER:**     Belt denies paragraph 33.

## COUNT I
### Declaratory Judgment

     34.    Viking Partners realleges paragraphs 1 through 33 as if fully set forth in this paragraph. Viking Partners owns the Viking Property in fee simple and has a clear legal interest in ascertaining the existence of any rights that may affect its use of the Viking Property.

      **ANSWER:**     Belt reasserts its responses to paragraphs 1 through 33 as set forth above to the first sentence. As far as the second sentence, Belt does not have sufficient knowledge with which to form a belief as to the truth or falsity of these allegations, demands strict proof, which answer is incorporated into all below answers where these allegations are utilized.

     35.    Belt Railway has claimed and continues to claim that it possesses an easement to use the Spur Line. In fact, Belt Railway has no right, title or interest in the Viking Property on which the Spur Line is located. There is no recorded document that gives Belt Railway an easement, and/or demonstrates the title holder's consent to an assignment of an easement that Belt Railway ultimately could acquire (other than in a very small piece of land at the southeast end of the Spur Line).

      **ANSWER:**     Belt admits the first sentence in paragraph 35. Belt denies the second sentence in paragraph 35. The final sentence of paragraph 35 merely states a legal conclusion, to

which no response is required; to the extent an answer is required, Belt denies the same.

36.     Belt Railway has not acquired a prescriptive easement for use of the Viking Property on which the Spur Line is built:

(a)     Belt Railway's use of the Viking Property has not been hostile for the required statutory period; and

(b)     Belt Railway's use of the Viking Property has not been under claim or title inconsistent with that of Viking Partners nor that of any prior owner for the statutory period.

**ANSWER:**     Paragraph 36 merely states a legal conclusion, to which no response is required; to the extent an answer is required, Belt denies the same.

37.     Despite Viking Partners' revocation of permission for Belt Railway to operate the Spur Line on the Viking Property, Belt Railway refuses to stop using the Spur Line. In fact, Belt Railway continues to assert that it possesses legal rights that allow it to use the Viking Property to operate the Spur Line.

**ANSWER:**     Belt denies that Plaintiff has any ability to affect any revocation, admits that Belt continues to operate on the Spur Line, and admits the second sentence of paragraph 37.

38.     A real and actual controversy exists as to whether Belt Railway has any rights, including an easement, to use the Viking Property to operate the Spur Line.

**ANSWER:**     Belt denies that Plaintiff has any rights that give rise to a real and actual controversy or claim, and denies the remaining allegations in paragraph 38.

39.     A finding by this Court is necessary to declare the rights of the parties as to whether Belt Railway has a legal right to use the Viking Property to operate the Spur Line.

**ANSWER:**     Belt denies paragraph 39.

40.     Resolving the controversy will avoid further litigation and potential harm to Viking Partners.

**ANSWER:**     Belt denies paragraph 40.

## COUNT II
### Trespass

41.     Plaintiff realleges paragraphs 1 through 40 as if fully set forth in this paragraph.

**ANSWER:** Belt reasserts its responses to paragraphs 1 through 40 as set forth above.

42. Belt Railway, by its operation and use of the Spur Line on Viking Property, has repeatedly and continuously entered the Viking Property without permission, invitation or any other right.

**ANSWER:** Belt denies paragraph 42.

43. Viking Partners has demanded that Belt Railway cease and desist from further trespasses on its property. Belt Railway has ignored those demands.

**ANSWER:** Belt denies paragraph 43.

44. Belt Railway has continued to use and occupy the Viking Property without payment of compensation or fees, and without payment of real estate taxes for the use of the Viking Property.

**ANSWER:** Belt denies that it has had any such obligations to pay such or other amounts to Plaintiff and denies the remaining allegations.

45. Belt Railway's actions are willful and wanton, or are in conscious disregard of Viking Property rights, and as such, constitute an intentional trespass.

**ANSWER:** Belt denies paragraph 45.

46. Belt Railway's trespasses have injured Viking Partners by preventing Viking Partners and Weldbend viable access to the Undeveloped Parcel and have prevented Viking Partners' quiet enjoyment of its Viking Property.

**ANSWER:** Belt denies paragraph 46.

## COUNT III
### Ejectment

47. Viking Partners realleges paragraphs 1 through 46 as if fully set forth in this paragraph.

**ANSWER:** Belt reasserts its responses to paragraphs 1 through 46 as set forth above.

48. This Count is brought pursuant to 735 ILCS 5/6-101 *et seq.*

**ANSWER:** Paragraph 48 merely states a legal conclusion to which no response is required.

49.     Viking Partners' predecessor in title took possession of the Viking Property prior to Belt Railway taking possession of portions of the Viking Property on which the Spur Line is built.

**ANSWER:**     Belt denies paragraph 49.

50.     Belt Railway has maintained possession of portions of the Viking Property through the present day.

**ANSWER:**     Belt admits possession of the so-called "Spur Line" and does not have sufficient knowledge to form a belief as to the truth or falsity of these allegations and demands strict proof of all such allegations.

51.     Viking Partners currently has a fee simple title to the Viking Property.

**ANSWER:**     Belt does not have sufficient knowledge with which to form a belief as to the truth or falsity of these allegations, demands strict proof, which answer is incorporated into all below answers where these allegations are utilized.

52.     Viking Partners' predecessor right to maintain an action of ejectment passed to Viking Partners when it acquired title to the Property.

**ANSWER:**     Paragraph 52 merely states a legal conclusion to which no response is required; to the extent a response is required, Belt denies the same.

53.     Belt Railway is presently and unlawfully withholding from Viking Partners the possession of those portions of the Viking Property on which the Spur Line is built and has denied Viking Partners the use of the Viking Property by preventing it from having access to or use of the Undeveloped Parcel.

**ANSWER:**     Belt denies paragraph 53.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

The claims of Plaintiff are barred by the relevant statutes of limitation, including: (i) the five-year statute of limitations applicable to trespass claims under 735 ILCS 5/13-205; (ii) the 20-year statute of limitations applicable to actions seeking the recovery of land under 735 ILCS

5/13-101 and 105; (iii) the seven-year statute of limitations applicable to actions seeking recovery of lands or an entry thereon, by reason of the termination of an estate upon limitation under 735 ILCS 5/13-103; and (iv) the ten-year statute of limitations applicable to breach-of-contract claims under 735 ILCS 5/13-206.

**Second Affirmative Defense**

The claims of Plaintiff are barred because Plaintiff had constructive notice of Belt's easement rights over the Spur Line by reason of the written agreements which are attached to Plaintiff's Second Amended Complaint and which are incorporated herein by reference including as exhibits hereto. Belt has continuously operated trains and moved railcars over and through the Spur Line since at least 1914, and continues to do so through today. At all times, since about 1914, any person or entity that has possessed, used, or owned the property that has included the "Spur Line" had ample opportunity to witness Belt's possession, rights, title, interest and use to/of the Spur Line. Indeed, James J. Coulas, Sr. acquired the "Viking Property" by way of a warranty deed in 1981 (attached hereto as **Exhibit A**) (the "**Deed**") that included language identifying "Permitted Exceptions" that provided a "right of way for railroad tracks, switches, and spurs." (*See* 'Permitted Exceptions," Ex. A at p. 3, ¶ 3.) Coupled with Belt's actual and continuing movement of railcars and trains on and through the Spur Line, the Deed establishes that Mr. Coulas had constructive notice of Belt's rights and interest in the Spur Line. Indeed, a bridge over the Spur Line was started that recognized the rights of Belt. (*See* photo attached as **Exhibit B**) The quitclaim deed that conveyed a part of the "Viking Property" to Coulas Viking Partners, L.P. (purportedly a Delaware limited partnership) on or about January 2, 2008, and the quitclaim deed that conveyed the remaining part of the "Viking Property" to Coulas Viking Partners (purportedly an Illinois general partnership) (attached respectively as **Exhibits C and D**), were subject to Mr. Coulas's and the respective Viking partnerships' constructive notice of

and subject to the prior and continuous Belt's possession and use of and rights, title and interest in the property.  Finally, Belt's counsel included, in numerous correspondences, a copy of a 1914 Easement Agreement (SAC, Ex. F) that provided, in paragraph 18 an easement in perpetuity "for the movement of all traffic including traffic to and from the plant of the Corn Products Company. . ."  (**Exhibits E and F**, excluding attachments).  Plaintiff, the two Viking partnerships, and each of their predecessors were thus on constructive knowledge of Belt's rights, title and interest in the "Viking Property" and acquired an interest subject to and junior to Belt's prior and superior right, title and interest.

### Third Affirmative Defense

The claims of Plaintiff are barred by laches because (i) Plaintiff's predecessor in interest never asserted any of the claims Plaintiff now asserts against Belt; (ii) Plaintiff did not assert these claims until January 12, 2015, roughly 34 years after James Coulas, Sr. allegedly took ownership and possession of the "Viking Property"; (iii) all the while Belt continued to use the Spur Line by, among other things, moving trains and rail cars on and through the Spur Line; (iv) Plaintiff's express acknowledgement that Belt continued to operate its business and use the Spur Line in connection with its business.

### Fourth Affirmative Defense

The claims of Plaintiff are barred by waiver and estoppel because (i) Plaintiff's predecessor in interest never asserted any of the claims Plaintiff now asserts against Belt; (ii) Plaintiff did not assert these claims until January 12, 2015, roughly 34 years after James Coulas, Sr. allegedly took ownership and possession of the "Viking Property"; (iii) all the while Belt continued to use the Spur Line by, among other things, moving trains and rail cars on and through the Spur Line; (iv) Plaintiff's express acknowledgement that Belt had a right to continue to operate its business and use the Spur Line in connection with its business, including the

construction of the bridge; and (v) Belt relied on Plaintiff's conduct and statements to its detriment.

### Fifth Affirmative Defense

The claims of Plaintiff are barred because Belt has a prescriptive easement over the Spur Line because Belt has used the Spur Line to move railcars using the Spur Line, on an uninterrupted basis for at least the past 20 years—indeed, going back roughly 100 years to 1914. Moreover, Belt's use of the Spur Line for these purposes has been conspicuous and open, as any observer of the property would be able to ascertain the use of the Spur Line by Belt. Finally, Belt's use of the Spur Line is, and has been since its first use more than 20 years ago, exclusive in that it is and has been the only entity to use the Spur Line for the movement of railcars. At no time prior to this lawsuit has any alleged owner of the "Viking Property" sought to interfere with, cease, or otherwise put an end to Belt's use of the Spur Line.

Respectfully submitted,

**THE BELT RAILWAY COMPANY OF CHICAGO**

By: _____
      One of its Attorneys

Thomas I. Matyas
Aaron J. Hersh
Locke Lord LLP
225 West Wacker Drive, Suite 3000
Chicago, Illinois 60606
(312) 201-2000
Firm No.: 44058

## CERTIFICATION

Pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that the statement set forth in this instrument are true and correct with respect to want of knowledge where so identified.

**THE BELT RAILWAY COMPANY OF CHICAGO**

By: _____
Timothy E. Coffey

AM 45599504.2

## CERTIFICATE OF SERVICE

I, Thomas I. Matyas, certify that true and correct copies of the foregoing **Belt Railway Company Of Chicago's Answer And Affirmative Defenses To Plaintiff's Second Amended Complaint For Declaratory, Injunctive And Other Relief** was served via messenger on February 27, 2015, before the hour of 5:00 p.m., upon the below:

> John M. Touhy
> Katharine E. Heitman
> Baker & Hostetler LLP
> 191 North Wacker Drive
> Suite 3100
> Chicago, IL 60606

Thomas I. Matyas
Aaron J. Hersh
Locke Lord LLP
225 West Wacker Drive, Suite 3000
Chicago, Illinois 60606
(312) 201-2000
Firm No.: 44058

GEORGE E. COLE
LEGAL FORMS
NO. 804
September, 1975

**WARRANTY DEED**

Statutory (Illinois)

(Corporation to Individual)

26074522

COOK COUNTY, ILLINOIS
FILED FOR RECORD

RECORDER OF DEEDS

*Sidney R. Olsen*

1981 DEC 2 PM 12 56 (Above Space For Recorder's Use Only) 26074522

THE GRANTOR **LAKE SHORE OIL CO.**

a corporation created and existing under and by virtue of the laws of the State of __Illinois__
and duly authorized to transact business in the State of __Illinois__, for and in consideration of
the sum of __TEN and 00/100 ($10.00)__ _____ DOLLARS,

in hand paid, and pursuant to authority given by the Board of __Directors__ of said corporation
CONVEYS and WARRANTS to __James J. Coulas, 7171 West 65th Street__
(NAME AND ADDRESS OF GRANTEE)
__Chicago, Cook County, Illinois__
the following described Real Estate situated in the County of __Cook__
in the State of Illinois, to wit:

See Legal Description Attached Hereto

In Witness Whereof, said Grantor has caused its corporate seal to be hereto affixed, and has caused its name
to be signed to these presents by its _____ President, and attested by its
__Assistant__ Secretary, this __30th__ day of __November__ 19 __81__.

Lake Shore Oil Co.
(NAME OF CORPORATION)

IMPRESS
CORPORATE SEAL
HERE

BY _____ PRESIDENT

ATTEST: _____ __Assistant__ SECRETARY

State of Illinois, County of __Cook__ ss. I, the undersigned, a Notary Public, in and for the
County and State aforesaid, DO HEREBY CERTIFY, that __John F Busch__
personally known to me to be the _____ President of the __Lake Shore Oil Co.__

IMPRESS
NOTARIAL SEAL
HERE

corporation, and __Richard C. Jones__ personally known to me to be
the __Assistant__ Secretary of said corporation, and personally known to
me to be the same persons whose names are subscribed to the foregoing instru-
ment, appeared before me this day in person and severally acknowledged that as
such _____ President and __Assistant__ Secretary, they signed
and delivered the said instrument as _____ President and __Assistant__
Secretary of said corporation, and caused the corporate seal of said corporation
to be affixed thereto, pursuant to authority, given by the Board of __Directors__
of said corporation as their free and voluntary act, and as the free and voluntary
act and deed of said corporation, for the uses and purposes therein set forth.
Given under my hand and official seal, this __30th__ day of __November__ 19 __81__.
Commission expires My Commission Expires Dec 1, 1982 19 _____ _____ NOTARY PUBLIC

This instrument was prepared by __Jill S. Tanz, Esq, One IBM Plaza, Chicago, Ill.__
(NAME AND ADDRESS)

MAIL TO:
A.H. Rogers, Esq
Mayer, Brown & Platt
231 South La Salle St
Chicago, Illinois 60604

OR RECORDER'S OFFICE BOX NO. __407__

ADDRESS OF PROPERTY:
6666 South Harlem Avenue
Argo, Illinois
THE ABOVE ADDRESS IS FOR STATISTICAL PURPOSES
ONLY AND IS NOT A PART OF THIS DEED.
SEND SUBSEQUENT TAX BILLS TO:

(Name)

(Address)

EXHIBIT A

WARRA[ ] Corporation.

## PERIMETER LEGAL DESCRIPTION

DEC 2, 1981

**PARCEL 1**

AN IRREGULAR PARCEL OF LAND LOCATED IN THE EAST 1/2 AND THE EAST 1/2 OF THE NORTH WEST 1/4 OF SECTION 24, TOWNSHIP 38 NORTH, RANGE 12 EAST OF THE THIRD PRINCIPAL MERIDIAN, BOUNDED AND DESCRIBED AS FOLLOWS: BEGINNING AT A POINT ON THE EAST LINE OF THE WEST 1/2 OF THE NORTH EAST 1/4 OF SECTION 24, AFORESAID 209.56 FEET NORTH OF THE SOUTH LINE OF THE NORTH EAST 1/4 OF SAID SECTION 24; THENCE EASTERLY ALONG A CURVED LINE, CONVEX SOUTHWESTERLY HAVING A RADIUS OF 934.62 FEET, AN ARC DISTANCE OF 7.18 FEET MORE OR LESS TO THE WEST LINE OF SOUTH HARLEM AVENUE AS PER DOCUMENT NO. 10954646; THENCE NORTHERLY ALONG SAID WEST LINE AN ARC DISTANCE OF 251.92 FEET TO THE NORTH LINE OF THE SOUTH 458 FEET OF THE NORTH EAST 1/4 OF SECTION 24 AFORESAID; THENCE EASTERLY ALONG SAID LINE 10.13 FEET MORE OR LESS TO THE WESTERLY LINE OF HARLEM AVENUE; THENCE NORTHEASTERLY ALONG A STRAIGHT LINE DRAWN THROUGH A POINT ON THE EAST LINE OF SECTION 24; WHICH IS 409.56 FEET SOUTH OF THE NORTH EAST CORNER OF SAID SECTION 24; A DISTANCE OF 43.87 FEET TO AN INTERSECTION WITH THE WESTERLY LINE OF HARLEM AVENUE, SAID LINE BEING A CURVED LINE, CONVEX NORTHWESTERLY HAVING A RADIUS OF 1482.69 FEET; THENCE NORTHERLY ALONG SAID CURVED LINE 204.71 FEET TO AN INTERSECTION WITH THE NORTH LINE OF THE SOUTH 688.50 FEET OF THE NORTH EAST 1/4 OF SECTION 24 AFORESAID; THENCE WESTERLY ON THE LAST DESCRIBED LINE 916.00 FEET TO A POINT 769.54 FEET, AS MEASURED ALONG LAST DESCRIBED NORTH LINE, WEST OF THE EAST LINE OF THE WEST 1/2 OF THE NORTH EAST 1/4, BEING A POINT OF INTERSECTION WITH A CURVED LINE, CONVEX SOUTHWESTERLY AND HAVING A RADIUS OF 914.62 FEET (BEING CONCENTRIC WITH THE FIRST CURVED LINE HEREIN DESCRIBED); THENCE NORTHWESTERLY ALONG SAID CURVED LINE AN ARC DISTANCE OF 70.23 FEET, TO A POINT OF TANGENCY OF SAID CURVED LINE; THENCE NORTHWESTERLY ALONG A LINE TANGENT TO SAID CURVE A DISTANCE OF 582.56 FEET TO A POINT OF TANGENCY OF A CURVED LINE, CONVEX TO THE NORTH EAST AND HAVING A RADIUS OF 1052.15 FEET; THENCE NORTHWESTERLY ALONG SAID CURVE A DISTANCE OF 525.00 FEET; THENCE SOUTHWESTERLY ALONG A RADIAL LINE OF THE LAST DESCRIBED CURVE, SAID RADIAL LINE FORMING AN ANGLE OF 36 DEGREES 16 MINUTES 20 SECONDS (MEASURED FROM SOUTH TO WEST) WITH THE INTERSECTION OF THE EAST LINE OF THE NORTH WEST 1/4 OF SECTION 24, AFORESAID (SAID INTERSECTING POINT BEING 122.87 FEET NORTH OF, AS MEASURED ALONG SAID EAST LINE OF THE NORTH WEST 1/4 OF SECTION 24, THE SOUTH LINE OF WEST 64TH PLACE AND ITS WESTERLY EXTENSION, AS LAID OUT IN CORN PRODUCTS SUBDIVISION RECORDED AS DOCUMENT NUMBER 4717893) A DISTANCE OF 125.49 FEET TO AN INTERSECTION WITH A CURVED LINE, CONVEX TO THE NORTH EAST AND HAVING A RADIUS OF 932.37 FEET; THENCE NORTHWESTERLY ALONG SAID CURVED LINE 279.88 FEET TO THE INTERSECTION WITH THE NORTHEASTERLY RIGHT OF WAY OF THE INDIANA HARBOR BELT RAILROAD; THENCE SOUTHEASTERLY ALONG SAID RIGHT OF WAY LINE, BEING A CURVED LINE CONVEX NORTHEASTERLY AND HAVING A RADIUS OF 2916.43 FEET, AN ARC DISTANCE OF 734.44 FEET TO A POINT OF REVERSE CURVE; THENCE SOUTHEASTERLY ALONG A CURVED LINE CONVEX SOUTHWESTERLY AND HAVING A RADIUS OF 1243.80 FEET AN ARC DISTANCE OF 295.52 FEET TO A POINT ON ANOTHER CURVED LINE; THENCE CONTINUE SOUTHEASTERLY ALONG A CURVED LINE CONVEX SOUTHWESTERLY AND HAVING A RADIUS OF 1375.40 FEET AN ARC DISTANCE OF 344.00 FEET TO A POINT ON A LINE TANGENT WITH THE LAST DESCRIBED COURSE; THENCE CONTINUE SOUTHEASTERLY ALONG SAID TANGENT LINE 228.50 FEET TO A POINT ON ANOTHER CURVED LINE CONVEX SOUTHWESTERLY AND HAVING RADIUS OF 1120.16 FEET; THENCE CONTINUE SOUTHEASTERLY AND EASTERLY ALONG SAID CURVED LINE AN ARC DISTANCE OF 599.41 FEET TO THE INTERSECTION WITH ANOTHER CURVED LINE CONVEX SOUTHWESTERLY AND HAVING A RADIUS OF 2071.68 FEET AND BEING THE NORTHERLY LINE OF TRACK AGREEMENT BETWEEN CHICAGO TITLE AND TRUST COMPANY AND CORN PRODUCTS REFINING COMPANY AND RELOCATION BY SUPPLEMENTAL AGREEMENT DATED MARCH 13, 1929, BETWEEN THE CHICAGO, WESTERN INDIANA RAILROAD AND THE BELT

RAILROAD COMPANY OF CHICAGO AND CHICAGO TITLE AND TRUST COMPANY, TRUST
NO. 3415, AND CHICAGO TRANSFER AND CLEARING COMPANY OF CHICAGO ALSO THE
CHICAGO, PEORIA, WESTERN RAILWAY COMPANY; THENCE SOUTHEASTERLY ALONG
SAID NORTHERLY LINE OF SAID SUPPLEMENTAL AGREEMENT 241.2 FEET TO A
POINT ON THE SOUTH LINE OF THE NORTH EAST 1/4 OF SECTION 24; SAID POINT
BEING 12.00 FEET NORTHEASTERLY OF, AS MEASURED RADIALLY TO THE CENTER
LINE OF SAID RELOCATED TRACK AND 125.22 FEET MORE OR LESS WEST OF THE
NORTH AND SOUTH CENTER LINE OF THE NORTH EAST 1/4 OF SECTION 24; THENCE
SOUTHEASTERLY ON A STRAIGHT LINE 146.76 FEET MORE OR LESS TO THE
INTERSECTION OF THE WESTERLY LINE OF HARLEM AVENUE (AS PER DOCUMENT
NUMBER 109164463); THENCE NORTHERLY ALONG SAID WESTERLY LINE OF HARLEM
AVENUE, BEING A CURVED LINE CONVEX WESTERLY AND HAVING A RADIUS OF
1380.92 FEET, AN ARC DISTANCE OF 206.36 FEET MORE OR LESS TO A POINT
158.00 FEET NORTH OF THE EAST AND WEST CENTER LINE OF SAID SECTION 24,
AS MEASURED AT RIGHT ANGLES THERETO; THENCE WEST ALONG A LINE 158.00 FEET
NORTH OF AND PARALLEL TO THE EAST AND WEST CENTER LINE OF SAID SECTION
24 A DISTANCE OF 4.61 FEET MORE OR LESS TO THE EAST LINE OF THE WEST
1/2 OF THE NORTH EAST 1/4 OF SAID SECTION 24; THENCE NORTH ALONG THE
AFOREMENTIONED EAST LINE OF THE WEST 1/2 OF THE NORTH EAST 1/4 0
SECTION 24, A DISTANCE OF 51.56 FEET TO THE POINT OF BEGINNING, IN COOK
COUNTY, ILLINOIS

PARCEL 2
EASEMENTS FOR THE BENEFIT OF PARCEL 1 ABOVE, CREATED BY INSTRUMENT
DATED NOVEMBER 6,1953 AND RECORDED IN THE OFFICE OF THE RECORDER OF
DEEDS OF COOK COUNTY, ILLINOIS, ON FEBRUARY 9,1954 AS DOCUMENT
15830294, RESPECTING INGRESS AND EGRESS OVER REAL ESTATE SITUATED TO
THE NORTH OF PART OF SAID PARCEL 1, IN COOK COUNTY, ILLINOIS.

SUBJECT TO THE FOLLOWING PERMITTED EXCEPTIONS:

1. Taxes for the year 1981;

2. EASEMENT FOR THE TERM OF 50 YEARS FROM NOVEMBER 1,1951 TO
NOVEMBER 1,2001 TO PLACE, INSTALL, MAINTAIN, OPERATE, REPAIR AND
RELOCATE A WATER MAIN UPON, ALONG, OVER AND UNDER THE FOLLOWING
DESCRIBED REAL ESTATE
A STRIP OF LAND 12 FEET WIDE, BEING 6 FEET ON EACH SIDE OF THE
FOLLOWING DESCRIBED CENTERLINE
COMMENCING AT A POINT 1027.51 FEET AND NORTH OF THE SOUTH LINE OF
THE NORTH 1/2 OF THE SOUTH EAST 1/4 OF SAID SECTION 24 AND 662.63
FEET EAST OF THE NORTH AND SOUTH CENTERLINE OF SAID SECTION,
THENCE NORTHERLY IN A STRAIGHT LINE, A DISTANCE OF 566.24 FEET TO
A POINT WHICH IS 1593.75 FEET NORTH OF THE SOUTH LINE OF THE
SOUTH EAST 1/4 OF SAID SECTION AND 666.28 FEET EAST OF THE NORTH
AND SOUTH CENTERLINE OF SAID SECTION, THENCE NORTHWESTERLY IN A
STRAIGHT LINE, A DISTANCE OF 535.86 FEET TO A POINT WHICH IS
2032.01 FEET NORTH OF THE SOUTH LINE OF THE NORTH 1/2 OF THE
SOUTH EAST 1/4 OF SAID SECTION AND 360.60 FEET EAST OF THE NORTH
AND SOUTH CENTERLINE OF SAID SECTION, THENCE NORTHEASTERLY IN A
STRAIGHT LINE A DISTANCE OF 25.75 FEET TO ITS CONNECTION WITH THE
CENTERLINE OF AN EXISTING 24 INCH WATER MAIN, WHICH IS 2044.29
FEET NORTH OF THE SOUTH LINE OF SAID NORTH 1/2 OF THE SOUTH EAST
1/4 AND 383.31 FEET EAST OF SAID NORTH AND SOUTH CENTERLINE IN
FAVOR OF MINNESOTA MINING AND MANUFACTURING COMPANY, CORPORATION
O DEL, ITS SUCCESSORS AND ASSIGNS AS GRANTED BY INSTRUMENT DATED
AUGUST 4,1953 AND RECORDED OCTOBER 30,1953 AS DOCUMENT 15758512,
AND TERMS AND CONDITIONS THEREIN CONTAINED.

3. RIGHT OF WAY FOR RAILROAD TRACKS, SWITCHES AND SPURS

4. GRANT FROM CHICAGO TITLE AND TRUST COMPANY, AS TRUSTEE TO CORN
PRODUCTS REFINING COMPANY, DATED NOVEMBER 1,1909 AND RECORDED
APRIL 4,1913 AS DOCUMENT 5158174 OF THE RIGHT TO CONSTRUCT ACROSS
A STRIP OF LAND OF SUFFICIENT WIDTH FOR A CUT 18 FEET IN WIDTH AT
THE BOTTOM AND WITH SAID SLOPES, 1 FOOT HORIZONTAL TO 1 FOOT
VERTICAL, THE WIDTH OF SAID STRIP NOT TO EXCEED AT ITS WIDEST
POINT, MORE THAN 46 FEET, THE CENTER OF SAID STRIP TO BE ALONG
THE FOLLOWING DESCRIBED LINE TO WIT
A LINE IN THE NORTH 1/2 OF SECTION 24 AFORESAID BEGINNING AT A
POINT DESCRIBED AS FOLLOWS:
FROM THE INTERSECTION OF THE NORTH LINE OF SAID SECTION 24 AND
THE SOUTHERLY LINE OF ARCHER ROAD MEASURED SOUTHWESTERLY ALONG
THE SAID SOUTHEASTERLY LINE OF SAID ARCHER ROAD 808.6 FEET,

THENCE EASTERLY AT RIGHT ANGLES 76 DEGREES, 30 MINUTES, WITH THE
CENTER LINE OF ARCHER ROAD 577.7 FEET TO A POINT OF BEGINNING,
FROM SAID POINT OF BEGINNING CONTINUED EASTERLY IN THE SAME
STRAIGHT LINE 303.9 FEET, THENCE BY A CURVED LINE TO THE RIGHT
WITH A RADIUS OF 955.37 FT,834.2 FEET; THENCE SOUTHEASTERLY IN A
STRAIGHT LINE 618.54 FEET, THENCE BY A CURVED LINE TO THE LEFT,
WITH A RADIUS OF 955.37 FEET, 1072.2FT;THENCE EAST IN A STRAIGHT
LINE 815.05 FEET, WHICH LINE IS PARALLEL TO AND 126 FEET NORTH
FROM THE EAST AND WEST CENTER LINE OF SAID SECTION 24; THENCE BY
A REVERSE CURVE TO THE RIGHT WITH A RADIUS OF 764.49 FEET TO THE
RIGHT OF WAY OF THE UNION TRANSFER RAILWAY COMPANY, AND WHERE
NECESSARY, AN ADDITIONAL 6 FEET IN THE TOTAL WIDTH AT THE BOTTOM
WITH SIDE SLOPES OF 1 FEET HORIZONTAL TO 1 FEET VERTICAL, THE
TOTAL WIDTH OF CUT NOT TO EXCEED 52 FEET, THE SAID ADDITIONAL 6
FEET BEING IN ALL CASES ON THE SOUTHWESTERLY SIDE OF THE CUT
ABOVE DESCRIBED OF A PERPETUAL EASEMENT FOR THE CONSTRUCTION,
MAINTENANCE AND OPERATION OF A RAILROAD TRACK, AND TO WHICH SAID
MENTIONED GRANT AS RECORDED, THERE IS APPENDED A CERTAIN
AGREEMENT DATED FEBRUARY 1,1908 BETWEEN THE CORN PRODUCTS MFG.
COMPANY., EDWIN W. WINTER AND CHICAGO TRANSFER AND CLEARING
COMPANY., PROVIDING FOR THE ERECTION BY SAID CORN PRODUCTS MFG.
COMPANY OF A TRACK OR TRACKS COMMENCING AT A POINT CONVENIENT TO
FIRST PARTY ON THE EAST LINE OF ARCHER ROAD NOT MORE THAN 700
FEET SOUTH OF THE CROSSING OF ARCHER ROAD, WITH THE RIGHT OF WAY
OF CHICAGO TRANSFER RY COMPANY, AND EXTENDING SOUTHERLY AND
EASTERLY TO A POINT 200 FEET WEST OF THE SOUTH WEST LINE OF SAID
RIGHT OF WAY OF SAID CHICAGO TERMINAL RY COMPANY AND THE NORTH
1/2 OF THE SOUTH WEST 1/4 OF SECTION 24 AFORESAID AND RUNNING
FROM SAID LAST MENTIONED POINT (DESCRIBED AS 200 FEET WEST OF THE
SOUTH WEST LINE OF THE RIGHT OF WAY OF THE CHICAGO TERMINAL
TRANSFER RY COMPANY) AND CROSSING THE TRACKS OF THE CHICAGO
TERMINAL RY COMPANY, EASTERLY AND SOUTHERLY TO A CONNECTION WITH
THE TRACKS OF THE CHICAGO UNION TRANSFER RY COMPANY AT OR NEAR
THE SOUTH WEST CORNER OF THE EAST 1/2 OF THE NORTH EAST 1/4 OF
SAID SECTION 24

5. AGREEMENT DATED NOVEMBER 1, 1909 AND RECORDED APRIL 4, 1913 AS
DOCUMENT 5158175 BETWEEN CHICAGO TITLE AND TRUST COMPANY, AS
TRUSTEE, CORN PRODUCTS REFINING COMPANY, CHICAGO PEORIA AND
WESTERN RAILWAY COMPANY, RECITING THE ASSIGNMENT BY SAID CORN
PRODUCTS REFINING COMPANY TO SAID CHICAGO PEORIA AND WESTERN
RAILWAY COMPANY OF THE RIGHTS ACQUIRED BY SAID REFINING COMPANY
UNDER THE AGREEMENT OF FEBRUARY 1, 1908 AND WHEREIN SAID RAILWAY
COMPANY AGREES TO PERFORM THE CONDITIONS AND COVENANTS OF THE
AGREEMENTS AND CONVEYANCES THERETO ATTACHED AS EXHIBITS A, "B"
AND C, APPENDED TO THE ABOVE AGREEMENT AS EXHIBIT "B" APPEARS TO
BE A COPY OF AN AGREEMENT HEREINBEFORE NOTED AS DOCUMENT 5158174,
AND FURTHER APPENDED THERETO AS EXHIBIT "C" IS A GRANT FROM
CHICAGO TITLE AND TRUST COMPANY, AS TRUSTEE TO CORN PRODUCTS
REFINING COMPANY OF AN EASEMENT IN PERPETUITY FOR THE
CONSTRUCTION, MAINTENANCE, AND OPERATING FOR INTERCHANGE AND
STORAGE PURPOSES ONLY 2 RAILROAD TRACKS UPON THE PROPERTY OF THE
GRANTOR, DESCRIBED AS FOLLOWS
BEGINNING AT A POINT ON TRACK "A" NEAR THE EAST LINE OF THE WEST
1/2 OF THE NORTH EAST 1/4 OF SECTION 24 AFORESAID AND
SOUTHWESTERLY OF SAID 2 TRACKS SHALL RUN OFF FROM TRACK 'A' AND
CONTINUE WESTERLY AND NORTHWESTERLY APPROXIMATELY PARALLEL TO AND
43 FEET FROM THE NORTH EAST TRACKS OF THE CHICAGO UNION TRANSFER
RAILWAY TO SUCH POINT AS SHALL BE MET BY A LINE RUNNING
SOUTHEASTERLY BY A SUITABLE REVERSE CURVE FROM THE SWITCH AND
CONNECTING WITH THE CHICAGO TERMINAL TRANSFER RAILWAY NEAR THE
UNDER CROSSING OF TRACK 'A' NORTHEASTERLY OF SAID TRACKS SHALL
RUN OFF THE SOUTHWESTERLY TRACK AT A POINT APPROXIMATELY 150 FEET
WEST OF THE EAST LINE OF THE WEST 1/2 OF THE NORTH EAST 1/4 OF
SAID SECTION 24, AND SHALL RUN BACK INTO SAID SOUTHEASTERLY TRACK
NEAR TO AND SOUTH EAST FROM THE POINT WHERE THE SAID
SOUTHWESTERLY CROSSES RIGHT OF WAY LINE OF THE CHICAGO TERMINAL
TRANSFER RAILROAD AND BETWEEN THOSE 2 POINTS SAID TRACKS SHALL BE
PARALLEL TO EACH OTHER AND 14 POINT DISTANT FROM CENTER TO CENTER
NOTE: SAID INSTRUMENT CONTAINS NO PROVISION FOR A FORFEITURE
OR REVERSION OF TITLE IN CASE OF BREACH OF CONDITION.

(4)

6. GRANT CONTAINED IN DEED DATED FEBRUARY 25, 1949 AND RECORDED
MARCH 1, 1949 AS DOCUMENT 14504975 FROM CLEARING INDUSTRIAL
DISTRICT, INC., CORPORATION OF DELAWARE TO 7100 S. CICERO AVENUE,
INC., A CORPORATION OF ILLINOIS, SUCCESSORS, GRANTEES, LESSEES,
AND ASSIGNS OF SAID CORPORATION, APPURTENANT TO THE LAND, THE
RIGHT IN PERPETUITY TO AN EASEMENT TO CONNECT WITH THE
UNDERGROUND SEWER SYSTEM NOW OR HEREAFTER SERVING THE LAND AND TO
HAVE ACCESS THERETO FOR THE PURPOSE OF MAKING ANY AND ALL
NECESSARY REPAIRS, REPLACEMENTS AND RENEWALS TO SAID SEWER, THE
SAID SEWER BEING LOCATED IN THE LAND DESCRIBED AS FOLLOWS
AN UNDERGROUND SEWER SYSTEM AS NOW LOCATED EXTENDING FROM THE
JUNCTION WITH THE SEWER OF THE SANITARY DISTRICT OF CHICAGO AT A
POINT APPROXIMATELY 600 FEET WEST OF ARCHER AVENUE LOCATED WITHIN
SOUTH 50 FEET OF NORTH EAST 1/4 OF SOUTH EAST 23, TOWNSHIP 38
NORTH, RANGE 12 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK
COUNTY, ILLINOIS, A DISTANCE OF 6130 FEET ACROSS THE NORTH EAST
1/4 OF SECTION 23 AND SOUTH 50 FEET OF THE NORTH 1/2 OF SECTION
24, TOWNSHIP 38 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL
MERIDIAN, TO A POINT IN THE SOUTH WEST 1/4 OF SECTION 19,
TOWNSHIP 38 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL
MERIDIAN, THEN BRANCHING TO THE SOUTH AND EXTENDING SOUTH EAST A
DISTANCE OF 3801 FEET ACROSS THE SOUTH 1/2 OF SAID SECTION 19 TO
A POINT ON THE SOUTH LINE OF SAID SECTION 19, THE EAST 8381 FEET
ALONG THE APPROXIMATE DIVIDING LINE BETWEEN SECTION 19 AND 30,
SECTIONS 20 AND 29, AND SECTIONS 21 AND 28 TO A POINT 500 FEET
EAST OF THE WEST LINE OF SAID SECTION 28, ALL IN TOWNSHIP 38
NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, ALSO THAT
PORTION OF SAID SEWER TO BE INSTALLED BY GRANTEE IN THE NORTH 1/2
OF SECTION 28 TO CONNECT THE PROPERTY HEREBY CONVEYED WITH THE
AFORESAID SEWER, SAID GRANTOR RESERVES THE RIGHT TO USE AND GRANT
TO OTHERS THE RIGHT TO USE SAID SEWER AND ALSO RESERVING THE
RIGHT POWER AND AUTHORITY (AND THE RIGHT TO GRANT TO OTHERS SUCH
RIGHT, POWER AND AUTHORITY) UNDER, ON, OVER AND ALONG SAID STRIP
OF LAND BENEATH, UPON OR ABOVE THE SURFACE OF THE LAND TO ERECT,
CONSTRUCT, RE-CONSTRUCT, EXTEND, ENLARGE, ALTER, IMPROVE,
OPERATE, REPAIR AND MAINTAIN SAID SEWER OR OTHER SEWERS AND ALL
NECESSARY, CONVENIENT AND PROPER CONNECTION THEREWITH AND
OPENINGS THEREIN AND THE APPURTENANCES NECESSARY OR CONVENIENT IN
AND ABOUT THE REASONABLE ENJOYMENT OR EXERCISE OF THE FOREGOING
PRIVILEGES, AND ALSO RESERVING THE RIGHT TO DEDICATE SUCH STRIP
OR STRIPS OF LAND OR ANY PART OR PARTS THEREOF TO THE PUBLIC TO
BE USED AS AND FOR A PUBLIC SEWER STREET OR STREETS


7. RESERVATION IN THE WARRANTY DEED FROM CHICAGO TRANSFER AND
CLEARING COMPANY TO CHICAGO UNION TRANSFER RAILROAD COMPANY DATED
JUNE 2, 1902 AND RECORDED JUNE 2, 1902 IN BOOK 7978 PAGE 61 AS
DOCUMENT 3253134 TO MAINTAIN, OPERATE AND CONSTRUCT ACROSS THE
LAND TELEPHONE AND TELEGRAPH LINES, PIPE LINES, SEWERS, CONDUITS,
AND SUBWAY AND TO MAKE CONNECTIONS WITH THE MAIN SEWER ALREADY
CONSTRUCTED THEREON


8. RIGHT OF EASEMENT GRANTED TO CHICAGO NATIONAL STOCK YARDS
COMPANY, A CORPORATION OF ILLINOIS, BY AMHERST H. WILDER AND HIS
WIFE, AND MAURICE AUERBACK AND HIS WIFE, BY DEED DATED SEPTEMBER
24, 1891 AND RECORDED OCTOBER 5, 1891 IN BOOK 3642 PAGE 379 AS
DOCUMENT 1546503 TO LAY DOWN AND PERPETUALLY OPERATE, REPAIR,
REPLACE AND MAINTAIN, A SEWER AND CONNECTIONS, MANHOLES AND OTHER
CUSTOMARY APPURTENANCES THERETO UPON A STRIP OF LAND 33 FEET WIDE
BEING THE NORTH 33 FEET OF THE SOUTH EAST 1/4 OF SECTION 24
AFORESAID

9. A 15 FOOT EASEMENT FOR WATER MAIN AS SHOWN BY SURVEY NO. 22594 BY GREELEY, HOWARD, NORLIN AND SMITH.

10. A 90 INCH SEWER MAIN AND 24 INCH C. I. WATER MAIN AS SHOWN BY SURVEY NO. 22594 BY GREELEY, HOWARD, NORLIN AND SMITH.

11. EASEMENT FOR UNDISCLOSED PURPOSES AS CONVEYED BY CLEARING INDUSTRIAL DISTRICT, INC., TO THE VILLAGE OF BEDFORD PARK, A MUNICIPAL CORPORATION, BY QUIT CLAIM DEED DATED SEPTEMBER 14, 1970 AND RECORDED SEPTEMBER 14, 1970 AS DOCUMENT 21263046 (AFFECTS A 15 FOOT STRIP WITH THE CENTER LINE BEING DESCRIBED AS COMMENCING AT A POINT 112 FEET EAST OF THE WEST LINE OF SECTION 19, TOWNSHIP 38 NORTH, RANGE 30, EAST OF THE THIRD PRINCIPAL MERIDIAN, 2.5 FEET NORTH OF THE SOUTH LINE OF THE NORTH EAST 1/4 OF SAID SECTION 19; THENCE WESTERLY TO A POINT 230 FEET WEST OF THE EAST LINE OF THE NORTH WEST 1/4 OF SECTION 24 AFORESAID AND 32.5 FEET NORTH OF THE SOUTH LINE OF THE NORTH EAST 1/4 OF SECTION 24 AFORESAID, AND OTHER PROPERTY NOT NOW IN QUESTION

12. RESERVATION OF EASEMENT CONTAINED IN DEED RECDDD APRIL 24, 1974 AS DOCUMENT 22695113 BY THE BELT RAILROAD COMPANY OF CHICAGO FOR 20 FOOT RAILROAD RIGHT OF WAY FOR RAILROAD TRACKS TURNOUTS AND APPURTENANCES NOTE: AFORESAID DEED EXCLUDED RAILROAD TRACKS TURNOUTS AND APPURTENANCES WHICH REMAIN THE PROPERTY OF AFORESAID BELT RAILROAD COMPANY OF CHICAGO

13. Rights of the public, the State of Illinois, and the Municipality in and to that part of the land, if any, taken or used for Row of Harlem Avenue.

DEC. 2, 1981

2607 45 22

6



**EXHIBIT B**



VILLAGE OF BEDFORD PARK

BY *Linda Mackas, Village Clerk*

**EXEMPT**

This document was prepared by
and after recording return to:

John D. Marshall
1300 Woodfield Rd Ste 110
Schaumburg, IL 60173



Doc#: 0807313020 Fee: $70.50
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 03/13/2008 09:41 AM Pg: 1 of 5

## QUITCLAIM DEED

THIS QUITCLAIM DEED, made as of this 2nd day of January, 2008, between the Estate of James J. Coulas (hereinafter called the "Grantor"), and Coulas Viking Partners, LP (hereinafter called the "Grantee").

WITNESSETH, that Grantor, for and in consideration of the sum of Ten Dollars in hand paid by the Grantee, the receipt whereof is hereby acknowledged by these presents, does SELL, CONVEY AND QUITCLAIM unto the Grantee, and to its successors and assigns, forever, all of Grantor's right, title and interest in and to the real estate described on **Exhibit A** attached hereto, together with all and singular the hereditaments and appurtenances thereto belonging, or in anywise appertaining, and the reversions, remainders, rents, issues and profits thereof, and all the estate, right, title, interest, claim or demand whatsoever, of the Grantor, either in law or equity, of, in and to the above described premises, with the hereditaments and appurtenances; TO HAVE AND TO HOLD the said premises as above described, with the appurtenances, unto the Grantee and its successors and assigns forever; so that neither the Grantor, nor any other person or persons, for it or in its name or behalf, shall or will hereafter claim or demand any right or title to the aforesaid premises or any part thereof, but they and each of them shall, by these presents, be excluded and forever barred. Grantor makes no representations or warranties regarding title.

Property Address: 6600 S Harlem Avenue, Bedford Park, IL 60501

Permanent Real Estate Index Numbers: 18-24-212-006-0000, 18-24-212-010-0000, 18-24-212-011-0000, 18-24-212-015-000, 18-24-212-016-0000, 18-24-212-017-0000, 18-24-212-018-0000, 18-24-212-019-0000, 18-24-212-020-0000, 18-24-213-006-0000, 18-24-213-007-0000, 18-24-213-008-0000

Exempt under Real Estate Transfer Tax Law 35 ILCS 200/31-45 sub par. e Cook County Ord. 93-0-27 par. e



**EXHIBIT C**

0807313020 Page: 2 of 5

IN WITNESS WHEREOF, the Grantor has caused its name to be signed to these presents the day and year first above written.

Irma C. Hammer, Executor
Estate of James J Coulas

MAIL TO:   John D. Marshall
           1300 Wooddfield Rd. Ste 110
           Schaumburg, IL 60173

SEND SUBSEQUENT TAX BILLS TO:   Weldbend Corporation
                                Attn: James J. Coulas, Jr.
                                6600 S Harlem Ave.
                                Bedford Park, IL 60501

STATE OF ILLINOIS   )
                    )   SS
COUNTY OF COOK      )

I, _____, notary public in and for said County, in the State aforesaid, DO HEREBY CERTIFY that Irma C. Hammer, and personally known to be the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that he signed and delivered the said instrument as his free and voluntary act for the uses and purposes therein set forth.

Given under my hand and official seal this ___ day of _____, 2008.

Notary Public

My commission expires: _____

"OFFICIAL SEAL"
DAVID B. SHULMAN
Notary Public, State of Illinois
My Commission Expires 10/28/11

## STATEMENT BY GRANTOR AND GRANTEE

Irma C. Hammer, affirms that, to the best of her knowledge, the name of the grantee shown on the deed or assignment of beneficial interest in a land trust is either a natural person, an Illinois corporation or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire and hold title to real estate in Illinois, or other entity recognized as a person and authorized to do business or acquire title to real estate under the laws of the State of Illinois.

Dated 1/8/08

Signature Irma C. Hammer

Irma C. Hammer, Executor
Estate of James J Coulas

Subscribed and sworn to before me
By the said
This ___ day of January 2008
Notary Public

"OFFICIAL SEAL"
DAVID B. SHULMAN
Notary Public, State of Illinois
My Commission Expires 10/25/11

Irma C. Hammer affirms and verifies that the name of the grantee shown on the deed or assignment of beneficial interest in a land trust is either a natural person, an Illinois corporation or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire and hold title to real estate in Illinois or other entity recognized as a person and authorized to do business or acquire title to real estate under the laws of the State of Illinois.

Dated 1/8/08

Signature Irma C. Hammer

Irma C. Hammer, General Partner
Coulas Viking Partners, LP

Subscribed and sworn to before me
By the said
This ___ day of January 2008
Notary Public

"OFFICIAL SEAL"
DAVID B. SHULMAN
Notary Public, State of Illinois
My Commission Expires 10/25/11

0807313020 Page: 4 of 5

## EXHIBIT A

AN UNDIVIDED ONE HALF ( ½ ) INTEREST IN THE FOLLOWING:

PARCEL 1

AN IRREGULAR PARCEL OF LAND LOCATED IN THE EAST ½ AND THE EAST ½ OF THE NORTHWEST ¼ OF SECTION 24, TOWNSHIP 38 NORTH, RANGE 12 EAST OF THE THIRD PRINCIPAL MERIDIAN, BOUNDED AND DESCRIBED AS FOLLOWS: BEGINNING AT A POINT ON THE EAST LINE OF THE WEST ½ OF THE NORTHEAST ¼ OF SECTION 24, AFORESAID 209.56 FEET NORTH OF THE SOUTH LINE OF THE NORTHEAST ¼ OF SAID SECTION 24; THENCE EASTERLY ALONG A CURVED LINE, CONVEX SOUTHWESTERLY HAVING A RADIUS OF 934.62 FEET, AN ARC DISTANCE OF 7.18 FEET MORE OR LESS TO THE WEST LINE OF SOUTH HARLEM AVENUE ACCORDING TO DOCUMENT NO. 10954846; THENCE NORTHERLY ALONG SAID WEST LINE AN ARC DISTANCE OF 251.92 FEET TO THE NORTH LINE OF THE SOUTH 458 FEET OF THE NORTHEAST ¼ OF SECTION 24 AFORESAID; THENCE EASTERLY ALONG SAID LINE 10.13 FEET MORE OR LESS TO THE WESTERLY LINE OF HARLEM AVENUE; THENCE NORTHEASTERLY ALONG A STRAIGHT LINE DRAWN THROUGH A POINT ON THE EAST LINE OF SECTION 24; WHICH IS 409.56 FEET SOUTH OF THE NORTHEAST CORNER OF SAID SECTION 24; A DISTANCE OF 43.87 FEET TO AN INTERSECTION WITH THE WESTERLY LINE OF HARLEM AVENUE, SAID LINE BEING A CURVED LINE, CONVEX NORTHWESTERLY HAVING A RADIUS OF 1482.69 FEET; THENCE NORTHERLY ALONG SAID CURVED LINE 204.71 FEET TO AN INTERSECTION WITH THE NORTH LINE OF THE SOUTH 688.50 FEET OF THE NORTHEAST ¼ OF SECTION 24 AFORESAID; THENCE WESTERLY ON THE LAST DESCRIBED NORTH LINE 916.00 FEET TO A POINT 769.54 FEET, AS MEASURED ALONG LAST DESCRIBED NORTH LINE, WEST OF THE EAST LINE OF THE WEST ½ OF THE NORTHEAST ¼, BEING A POINT OF INTERSECTION WITH A CURVED LINE, CONVEX SOUTHWESTERLY AND HAVING A RADIUS OF 914.62 FEET (BEING CONCENTRIC WITH THE FIRST CURVED LINE HEREIN DESCRIBED); THENCE NORTHWESTERLY ALONG SAID CURVED LINE AN ARC DISTANCE OF 70.23 FEET, TO A POINT OF TANGENCY OF SAID CURVED LINE; THENCE NORTHWESTERLY ALONG A LINE TANGENT TO SAID CURVE A DISTANCE OF 582.56 FEET TO A POINT OF TANGENCY OF A CURVED LINE, CONVEX TO THE NORTHEAST AND HAVING A RADIUS OF 1052.15 FEET; THENCE NORTHWESTERLY ALONG SAID CURVE A DISTANCE OF 525.00 FEET; THENCE SOUTHWESTERLY ALONG A RADIAL LINE OF THE LAST DESCRIBED CURVE, SAID RADIAL LINE FORMING AN ANGLE OF 36 DEGREES 16 MINUTES 20 SECONDS (MEASURED FROM SOUTH TO WEST) WITH THE INTERSECTION OF THE EAST LINE OF THE NORTHWEST ¼ OF SECTION 24, AFORESAID ( SAID INTERSECTING POINT BEING 122.87 FEET NORTH OF, AS MEASURED ALONG SAID EAST LINE OF THE NORTHWEST 1/4 OF SECTION 24, THE SOUTH LINE OF WEST 64TH PLACE AND ITS WESTERLY EXTENSION, AS LAID OUT IN CORN PRODUCTS SUBDIVISION RECORDED AS DOCUMENT NUMBER 4717893) A DISTANCE OF 125.49 FEET TO AN INTERSECTION WITH A CURVED LINE, CONVEX TO THE NORTHEAST AND HAVING A RADIUS OF 932.37 FEET; THENCE NORTHWESTERLY ALONG SAID CURVED LINE 279.88 FEET TO THE INTERSECTION WITH THE NORTHEASTERLY RIGHT OF WAY OF THE INDIANA HARBOR BELT RAILROAD; THENCE SOUTHEASTERLY ALONG SAID RIGHT OF WAY LINE, BEING A CURVED LINE CONVEX NORTHEASTERLY AND HAVING A RADIUS OF 2916.43

FEET, AN ARC DISTANCE OF 734.44 FEET TO A POINT OF REVERSE CURVE; THENCE SOUTHWESTERLY ALONG A CURVED LINE CONVEX SOUTHWESTERLY AND HAVING A RADIUS OF 1243.80 FEET AN ARC DISTANCE OF 295.52 FEET TO A POINT ON ANOTHER CURVED LINE; THENCE CONTINUE SOUTHEASTERLY ALONG A CURVED LINE CONVEX SOUTHWESTERLY AND HAVING A RADIUS OF 1375.40 FEET AN ARC DISTANCE OF 344.00 FEET TO A POINT ON A LINE TANGENT WITH THE LAST DESCRIBED COURSE; THENCE CONTINUE SOUTHEASTERLY ALONG SAID TANGENT LINE 228.50 FEET TO A POINT ON ANOTHER CURVED LINE CONVEX SOUTHWESTERLY AND HAVING RADIUS OF 1120.16 FEET; THENCE CONTINUE SOUTHEASTERLY AND EASTERLY ALONG SAID CURVED LINE AN ARC DISTANCE OF 599.41 FEET TO THE INTERSECTION WITH ANOTHER CURVED LINE CONVEX SOUTHWESTERLY AND HAVING A RADIUS OF 2071.68 FEET AND BEING THE NORTHERLY LINE OF TRACK AGREEMENT BETWEEN CHICAGO TITLE AND TRUST COMPANY AND CORN PRODUCTS REFINING COMPANY AND RELOCATION BY SUPPLEMENTAL AGREEMENT DATED MARCH 13, 1929, BETWEEN CHICAGO, WESTERN INDIANA RAILROAD AND THE BELT RAILROAD COMPANY OF CHICAGO AND CHICAGO TITLE AND TRUST COMPANY, TRUST NO. 3415, AND CHICAGO TRANSFER AND CLEARING COMPANY OF CHICAGO ALSO THE CHICAGO, PEORIA, WESTERN RAILWAY COMPANY; THENCE SOUTHEASTERLY ALONG SAID NORTHERLY LINE OF SAID SUPPLEMENTAL AGREEMENT 241.2 FEET TO A POINT ON THE SOUTH LINE OF THE NORTHEAST ¼ OF SECTION 24; SAID POINT BEING 12.00 FEET NORTHEASTERLY OF, AS MEASURED RADIALLY TO THE CENTER LINE OF SAID RELOCATED TRACK AND 125.22 FEET MORE OR LESS WEST OF THE NORTH AND SOUTH CENTER LINE OF THE NORTHEAST ¼ OF SECTION 24; THENCE SOUTHEASTERLY ON A STRAIGHT LINE 146.76 FEET MORE OR LESS TO THE INTERSECTION OF THE WESTERLY LINE OF HARLEM AVENUE (AS PER DOCUMENT NUMBER 10954846); THENCE NORTHERLY ALONG SAID WESTERLY LINE OF HARLEM AVENUE. BEING A CURVED LINE CONVEX WESTERLY AND HAVING A RADIUS OF 1380.92 FEET, AN ARC DISTANCE OF 206.36 FEET MORE OR LESS TO A POINT 158.00 FEET NORTH OF THE EAST AND WEST CENTER LINE OF SAID SECTION 24, AS MEASURED AT RIGHT ANGLES THERETO; THENCE WEST ALONG A LINE OF 158.00 FEET NORTH OF AND PARALLEL TO THE EAST AND WEST CENTER LINE OF SAID SECTION 24 A DISTANCE OF 4.61 FEET MORE OR LESS TO THE EAST LINE OF THE WEST ½ OF THE NORTHEAST ¼ OF SAID SECTION 24; THENCE NORTH ALONG THE AFOREMENTIONED EAST LINE OF THE WEST ½ OF THE NORTHEAST ¼ OF SECTION 24, A DISTANCE OF 51.56 FEET TO THE POINT OF BEGINNING, IN COOK COUNTY, ILLINOIS

PARCEL 2
EASEMENTS FOR THE BENEFIT OF PARCEL 3 ABOVE, CREATED BY INSTRUMENT DATED NOVEMBER 6, 1953 AND RECORDED IN THE OFFICE OF THE RECORDER OF DEEDS OF COOK COUNTY, ILLINOIS, ON FEBRUARY 9, 1954 AS DOCUMENT 15830294, REPECTING INGRESS AND EGRESS OVER REAL ESTATE SITUATED TO THE NORTH OF PART OF SAID PARCEL 3, IN COOK COUNTY, ILLINOIS

This document was prepared by
and after recording return to:

John D. Marshall
520 N Hicks Rd Ste 120
Palatine, IL 60067



Doc#:  1018047001 Fee: $46.25
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 06/29/2010 08:54 AM  Pg:  1 of 5

## QUITCLAIM DEED

THIS QUITCLAIM DEED, made as of this 1st day of December, 2009, between the Coulas Family Partners, LP (hereinafter called the "Grantor"), and Coulas Viking Partners, an Illinois General Partnership (hereinafter called the "Grantee").

WITNESSETH, that Grantor, for and in consideration of the sum of Ten Dollars in hand paid by the Grantee, the receipt whereof is hereby acknowledged by these presents, does SELL, CONVEY AND QUITCLAIM unto the Grantee, and to its successors and assigns, forever, all of Grantor's right, title and interest in and to the real estate described on **Exhibit A** attached hereto, together with all and singular the hereditaments and appurtenances thereto belonging, or in anywise appertaining, and the reversions, remainders, rents, issues and profits thereof, and all the estate, right, title, interest, claim or demand whatsoever, of the Grantor, either in law or equity, of, in and to the above described premises, with the hereditaments and appurtenances; TO HAVE AND TO HOLD the said premises as above described, with the appurtenances, unto the Grantee and its successors and assigns forever; so that neither the Grantor, nor any other person or persons, for it or in its name or behalf, shall or will hereafter claim or demand any right or title to the aforesaid premises or any part thereof, but they and each of them shall, by these presents, be excluded and forever barred.  Grantor makes no representations or warranties regarding title.

Property Address: 6600 S Harlem Avenue, Bedford Park, IL 60501

Permanent Real Estate Index Numbers: 18-24-212-006-0000,  18-24-212-010-0000, 18-24-212-011-0000, 18-24-212-015-0000,  18-24-212-016-0000, 18-24-212-017-0000, 18-24-212-018-0000, 18-24-212-019-0000,  18-24-212-020-0000, 18-24-213-006-0000, 18-24-213-007-0000, 18-24-213-008-0000

Exempt under Real Estate Transfer Tax Law 35 ILCS 200/31-45 sub par. e Cook County Ord. 93-0-27 par. E

*Jon Marshall, agent*          12-22-09

S _YES_
P _5_
S _NO_
M _YES_
SC _YES_

VILLAGE OF BEDFORD PARK

BY *Carol Dun* EXEMPT

*Village Clerk*

EXHIBIT D

1018047001 Page: 2 of 5

IN WITNESS WHEREOF, the Grantor has caused its name to be signed to these presents the day and year first above written.

Irma C. Hammer, as Trustee of
Irma C Hammer Perpetual Trust
Managing General Partner
Coulas Family Partners

MAIL TO:  John D. Marshall
520 N Hicks Rd Ste 120
Palatine, IL 60067

SEND SUBSEQUENT TAX BILLS TO:  Weldbend Corporation
Attn: James J. Coulas, Jr.
6600 S Harlem Ave.
Bedford Park, IL 60501

STATE OF ILLINOIS        )
                         )    SS
COUNTY OF COOK           )

I, _David B Shecance_ notary public in and for said County, in the State aforesaid, DO HEREBY CERTIFY that Irma C. Hammer, and personally known to be the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that he signed and delivered the said instrument as his free and voluntary act for the uses and purposes therein set forth.

Given under my hand and official seal this 25 day of December, 2009.

Notary Public

"OFFICIAL SEAL"
DAVID B. SHULMAN
Notary Public, State of Illinois
My Commission Expires 10/25/11

My commission expires: 10-25-11

## EXHIBIT A

AN UNDIVIDED ONE HALF ( ½ ) INTEREST IN THE FOLLOWING:

PARCEL 1

AN IRREGULAR PARCEL OF LAND LOCATED IN THE EAST ½ AND THE EAST ½ OF
THE NORTHWEST ¼ OF SECTION 24, TOWNSHIP 38 NORTH, RANGE 12 EAST OF THE
THIRD PRINCIPAL MERIDIAN, BOUNDED AND DESCRIBED AS FOLLOWS:
BEGINNING AT A POINT ON THE EAST LINE OF THE WEST ½ OF THE NORTHEAST ¼
OF SECTION 24, AFORESAID 209.56 FEET NORTH OF THE SOUTH LINE OF THE
NORTHEAST ¼ OF SAID SECTION 24; THENCE EASTERLY ALONG A CURVED LINE,
CONVEX SOUTHWESTERLY HAVING A RADIUS OF 934.62 FEET, AN ARC DISTANCE
OF 7.18 FEET MORE OR LESS TO THE WEST LINE OF SOUTH HARLEM AVENUE
ACCORDING TO DOCUMENT NO. 10954846; THENCE NORTHERLY ALONG SAID
WEST LINE AN ARC DISTANCE OF 251.92 FEET TO THE NORTH LINE OF THE SOUTH
458 FEET OF THE NORTHEAST ¼ OF SECTION 24 AFORESAID; THENCE EASTERLY
ALONG SAID LINE 10.13 FEET MORE OR LESS TO THE WESTERLY LINE OF HARLEM
AVENUE; THENCE NORTHEASTERLY ALONG A STRAIGHT LINE DRAWN THROUGH
A POINT ON THE EAST LINE OF SECTION 24; WHICH IS 409.56 FEET SOUTH OF THE
NORTHEAST CORNER OF SAID SECTION 24; A DISTANCE OF 43.87 FEET TO AN
INTERSECTION WITH THE WESTERLY LINE OF HARLEM AVENUE, SAID LINE
BEING A CURVED LINE, CONVEX NORTHWESTERLY HAVING A RADIUS OF 1482.69
FEET; THENCE NORTHERLY ALONG SAID CURVED LINE 204.71 FEET TO AN
INTERSECTION WITH THE NORTH LINE OF THE SOUTH 688.50 FEET OF THE
NORTHEAST ¼ OF SECTION 24 AFORESAID; THENCE WESTERLY ON THE LAST
DESCRIBED NORTH LINE 916.00 FEET TO A POINT 769.54 FEET, AS MEASURED
ALONG LAST DESCRIBED NORTH LINE, WEST OF THE EAST LINE OF THE WEST ½
OF THE NORTHEAST ¼, BEING A POINT OF INTERSECTION WITH A CURVED LINE,
CONVEX SOUTHWESTERLY AND HAVING A RADIUS OF 914.62 FEET (BEING
CONCENTRIC WITH THE FIRST CURVED LINE HEREIN DESCRIBED); THENCE
NORTHWESTERLY ALONG SAID CURVED LINE AN ARC DISTANCE OF 70.23 FEET,
TO A POINT OF TANGENCY OF SAID CURVED LINE; THENCE NORTHWESTERLY
ALONG A LINE TANGENT TO SAID CURVE A DISTANCE OF 582.56 FEET TO A POINT
OF TANGENCY OF A CURVED LINE, CONVEX TO THE NORTHEAST AND HAVING A
RADIUS OF 1052.15 FEET; THENCE NORTHWESTERLY ALONG SAID CURVE A
DISTANCE OF 525.00 FEET; THENCE SOUTHWESTERLY ALONG A RADIAL LINE OF
THE LAST DESCRIBED CURVE, SAID RADIAL LINE FORMING AN ANGLE OF 36
DEGREES 16 MINUTES 20 SECONDS (MEASURED FROM SOUTH TO WEST) WITH THE
INTERSECTION OF THE EAST LINE OF THE NORTHWEST ¼ OF SECTION 24,
AFORESAID ( SAID INTERSECTING POINT BEING 122.87 FEET NORTH OF, AS
MEASURED ALONG SAID EAST LINE OF THE NORTHWEST 1/4 OF SECTION 24, THE
SOUTH LINE OF WEST 64TH PLACE AND ITS WESTERLY EXTENSION, AS LAID OUT
IN CORN PRODUCTS SUBDIVISION RECORDED AS DOCUMENT NUMBER 4717893) A
DISTANCE OF 125.49 FEET TO AN INTERSECTION WITH A CURVED LINE, CONVEX
TO THE NORTHEAST AND HAVING A RADIUS OF 932.37 FEET; THENCE
NORTHWESTERLY ALONG SAID CURVED LINE 279.88 FEET TO THE INTERSECTION
WITH THE NORTHEASTERLY RIGHT OF WAY OF THE INDIANA HARBOR BELT
RAILROAD; THENCE SOUTHEASTERLY ALONG SAID RIGHT OF WAY LINE, BEING A
CURVED LINE CONVEX NORTHEASTERLY AND HAVING A RADIUS OF 2916.43

FEET, AN ARC DISTANCE OF 734.44 FEET TO A POINT OF REVERSE CURVE; THENCE SOUTHWESTERLY ALONG A CURVED LINE CONVEX SOUTHWESTERLY AND HAVING A RADIUS OF 1243.80 FEET AN ARC DISTANCE OF 295.52 FEET TO A POINT ON ANOTHER CURVED LINE; THENCE CONTINUE SOUTHEASTERLY ALONG A CURVED LINE CONVEX SOUTHWESTERLY AND HAVING A RADIUS OF 1375.40 FEET AN ARC DISTANCE OF 344.00 FEET TO A POINT ON A LINE TANGENT WITH THE LAST DESCRIBED COURSE; THENCE CONTINUE SOUTHEASTERLY ALONG SAID TANGENT LINE 228.50 FEET TO A POINT ON ANOTHER CURVED LINE CONVEX SOUTHWESTERLY AND HAVING RADIUS OF 1120.16 FEET; THENCE CONTINUE SOUTHEASTERLY AND EASTERLY ALONG SAID CURVED LINE AN ARC DISTANCE OF 599.41 FEET TO THE INTERSECTION WITH ANOTHER CURVED LINE CONVEX SOUTHWESTERLY AND HAVING A RADIUS OF 2071.68 FEET AND BEING THE NORTHERLY LINE OF TRACK AGREEMENT BETWEEN CHICAGO TITLE AND TRUST COMPANY AND CORN PRODUCTS REFINING COMPANY AND RELOCATION BY SUPPLEMENTAL AGREEMENT DATED MARCH 13, 1929, BETWEEN CHICAGO, WESTERN INDIANA RAILROAD AND THE BELT RAILROAD COMPANY OF CHICAGO AND CHICAGO TITLE AND TRUST COMPANY, TRUST NO. 3415, AND CHICAGO TRANSFER AND CLEARING COMPANY OF CHICAGO ALSO THE CHICAGO, PEORIA, WESTERN RAILWAY COMPANY; THENCE SOUTHEASTERLY ALONG SAID NORTHERLY LINE OF SAID SUPPLEMENTAL AGREEMENT 241.2 FEET TO A POINT ON THE SOUTH LINE OF THE NORTHEAST ¼ OF SECTION 24; SAID POINT BEING 12.00 FEET NORTHEASTERLY OF, AS MEASURED RADIALLY TO THE CENTER LINE OF SAID RELOCATED TRACK AND 125.22 FEET MORE OR LESS WEST OF THE NORTH AND SOUTH CENTER LINE OF THE NORTHEAST ¼ OF SECTION 24; THENCE SOUTHEASTERLY ON A STRAIGHT LINE 146.76 FEET MORE OR LESS TO THE INTERSECTION OF THE WESTERLY LINE OF HARLEM AVENUE (AS PER DOCUMENT NUMBER 10954846); THENCE NORTHERLY ALONG SAID WESTERLY LINE OF HARLEM AVENUE. BEING A CURVED LINE CONVEX WESTERLY AND HAVING A RADIUS OF 1380.92 FEET, AN ARC DISTANCE OF 206.36 FEET MORE OR LESS TO A POINT 158.00 FEET NORTH OF THE EAST AND WEST CENTER LINE OF SAID SECTION 24, AS MEASURED AT RIGHT ANGLES THERETO; THENCE WEST ALONG A LINE OF 158.00 FEET NORTH OF AND PARALLEL TO THE EAST AND WEST CENTER LINE OF SAID SECTION 24 A DISTANCE OF 4.61 FEET MORE OR LESS TO THE EAST LINE OF THE WEST ½ OF THE NORTHEAST ¼ OF SAID SECTION 24; THENCE NORTH ALONG THE AFOREMENTIONED EAST LINE OF THE WEST ½ OF THE NORTHEAST ¼ OF SECTION 24, A DISTANCE OF 51.56 FEET TO THE POINT OF BEGINNING, IN COOK COUNTY, ILLINOIS

PARCEL 2
EASEMENTS FOR THE BENEFIT OF PARCEL 3 ABOVE, CREATED BY INSTRUMENT DATED NOVEMBER 6, 1953 AND RECORDED IN THE OFFICE OF THE RECORDER OF DEEDS OF COOK COUNTY, ILLINOIS, ON FEBRUARY 9, 1954 AS DOCUMENT 15830294, REPECTING INGRESS AND EGRESS OVER REAL ESTATE SITUATED TO THE NORTH OF PART OF SAID PARCEL 3, IN COOK COUNTY, ILLINOIS

1018047001 Page: 5 of 5

## STATEMENT BY GRANTOR AND GRANTEE

The grantor or his agent affirms that, to the best of his knowledge, the name of the grantor shown on the deed assignment of beneficial interest in land trust is either a natural person, and Illinois corporation or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire and hold title to real estate in Illinois, or other entity recognized as a person and authorized to do business or acquire title to real estate under the laws of the State of Illinois.

Dated _____ May 4 _____, 20 10 Signature: _____
                                                    Grantor or Agent

Subscribed and sworn to before
Me by the said John D Marshall
this 4th day of May ,
20 10 .

NOTARY PUBLIC Maria C Blair _____

```
OFFICIAL SEAL
MARIA C. BLAIR
Notary Public - State of Illinois
My Commission Expires Dec 01, 2010
```

The Grantee or his agent affirms and verifies that the name of the grantee shown on the deed or assignment of beneficial interest in a land trust is either a natural person, an Illinois corporation or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois a partnership authorized to do business or entity recognized as a person and authorized to do business or acquire and hold title to real estate under the laws of the State of Illinois.

Date _____ May 4 _____, 20 10 Signature: _____
                                                    Grantee or Agent

Subscribed and sworn to before
Me by the said John D Marshall
This 4th day of May ,
20 10 .

NOTARY PUBLIC Maria C Blair _____

```
OFFICIAL SEAL
MARIA C. BLAIR
Notary Public - State of Illinois
My Commission Expires Dec 01, 2010
```

NOTE: Any person who knowingly submits a false statement concerning the identity of grantee shall be guilty of a Class C misdemeanor for the first offense and of a Class A misdemeanor for subsequent offenses. (Attach to deed or ABI to be recorded in Cook County, Illinois if exempt under provisions of Section 4 of the Illinois Real Estate Transfer Tax Act.)

Wildman, Harrold, Allen & Dixon LLP
225 West Wacker Drive
Chicago, Illinois 60606-1229
312-201-2000
312-201-2555 fax
www.wildman.com



**Wildman Harrold**
*Attorneys and Counselors*

Thomas I. Matyas
312-201-2692
matyas@wildman.com

October 30, 2009

**LETTER ONLY BY E-MAIL (anicely@mayerbrown.com)**
**and LETTER AND ENCLOSURES VIA FEDERAL EXPRESS**

Andrew A. Nicely
Mayer Brown LLP
1999 K Street NW
Washington, DC 20006

Re:    **The Belt Railway Company of Chicago - Rail Spur Easement
       located at approximately 6600 S. Harlem Avenue, Bedford
       Park, Illinois**

Dear Mr. Nicely:

Pursuant to our recent correspondence and requests for additional documents relating to The Belt Railway Company of Chicago's easement rights over that certain rail spur parcel located in the vicinity of 6600 S. Harlem Avenue, we enclose the following for review.

1.    **Agreement dated October 18, 1906**

      **Parties:** Chicago Transfer and Clearing Company, as Vendor (CTC) and Corn Products Refining Company as Purchaser (Corn)

      **Party by Reference:** Chicago Union Transfer Co. as Railway Company (CUT)

      **Exhibits:**    Exhibit 'A' Section map showing land conveyed to Corn in Sections 23 and 24

                       Exhibit 'B' Blueprint showing Tracks and labeling the Tracks 'A', 'BB' and 'CC'

      **Conveyance:** CTC sells to Corn north 1200 feet of Section 23 T38 N R 12 E, and bounded by Section boundaries on north and east sides, and



**EXHIBIT E**

Andrew A. Nicely
October 30, 2009
Page 2



on west by C and A railroad, and that part of north 1200 feet of Section 24 from west line of Section 24 easterly to the west line of Archer Avenue and the west line of the CTT in the extreme north east corner of the parcel, 107 acres more or less. Sale parcel shown on Exhibit 'A' in red. CTC also conveys perpetual easement for the construction and operation of Track 'A''.

**Pertinent Provisions Include:**

Track 'A'       Provides Plan Exhibit showing Track 'A'. Corn gets perpetual Easement to build and operate 'A'. Provides general description of easement and provides description of point of west most end of 'A' west of the Chicago Terminal Transportation Railroad ("CTT"). This point generally hereafter is Point 'H'. CTC, CUT and Assigns have right to use Track A for non Corn traffic.

CTT Crossing    Lays responsibility for obtaining CTT crossing on Corn. If Corn gets right to cross CTT, must grant same to CTC or CUT or its assigns.

Long Track East CTC, through CUT, will grant rights to Corn to operate to connection with other railroads to the east.

CPW             Refers to Chicago Peoria Western Railway Company. First mention of 'designated corporation' to which Corn can convey rights provided Corn.

**Recording:**    Provides that document is not to be recorded.

2.   <u>**Second Agreement dated October 18, 1906**</u>

**Parties:** Chicago Transfer and Clearing Company as First Party (CTC) and Chicago Union Transfer Co as Second Party (CUT)

**Exhibit:**    First Agreement of October 18, 1906, and its two exhibits

**Conveyance:** Entirety of First Agreement of October 18, 1906, as detailed above, is exhibited to this Second Agreement as Exhibit 'A'.

Andrew A. Nicely
October 30, 2009
Page 3



**Pertinent Provisions Include:**

CTC brings in CUT and CUT agrees to First 10/18/06 Agreement to fulfill requirements committed by CTC to Corn.

3.  **Agreement dated October 21, 1907**

    **Parties:** Chicago Terminal Transfer Railroad Company as Terminal Company (CTT) and Chicago Peoria and Western Railway Company as Second Party (CPW)

    **Exhibit:**  Blueprint showing CTT/CPW crossing and angle; and distance reference to CTT/Archer Road crossing

    **Conveyance:** CTT grants CPW right to build and maintain a crossing of CTT generally 900 feet SE of c/l of Archer Road as measured along right of way of CTT. Upon the elevation of the CTT track, CPW will maintain the sub- and super-structures associated with elevating CTT over CPW.

    **Pertinent Provisions Include:**

    CPW        Granted right to build the crossing to connect its rights granted by CTC. Agreement and covenants binding on parties' successors and Assigns. No restriction on assignment.

4.  **Agreement dated February 1, 1908**

    **Parties:** Chicago Union Transfer Railway Company as First Party (CUT) and Chicago, Peoria and Western Railway Company as Second Party (CPW)

    **Exhibit:**  CTT/CPW Agreement of October 21, 1907 covering CPW crossing of CTT includes Exhibit 'A' blueprint showing crossing and distance reference from Archer Avenue

    **Conveyance:** CPW granted use joint with CUT of track between described points for 15 years. Track connects on its east end in section 22 with west line of BRC right of way and at its west end with

Andrew A. Nicely
October 30, 2009
Page 4



'connection hereinbefore referred to'. Citation describes Track 'A' but does not name it as such. CPW to construct a track from the west end of the CUT northerly and westerly to a point 200 feet west of west line of CTT (this is Track A'), CPW has rights to cross CTT, and CPW grants CUT and its assigns perpetual right to use the constructed track, including crossing CTT jointly with CPW.

**Pertinent Provisions Include:**

Track 'A'    CPW to build described as track on right of way granted to CPW by CTC. CUT and its assigns to have perpetual rights there over. CUT given perpetual right over this track, but can not handle CPC traffic.

CTT Crossing    Established that CPW has agreement to cross, and is giving CUT perpetual right to do so as well.

Long Track East    Gives CPW rights on CUT to Sec. 22 connection with BRC and north to Section 11 connection with other railroad.

CPW    CPW is cited as having been given Corn's rights granted Corn by CTC for a right of way connecting to CUT.

5.    **Agreement dated November 1, 1909**

**Parties:**    Chicago Union Transfer Railway Company as Transfer Company (CUT) and Chicago, Peoria and Western Railway Company as Peoria and Western Company (CPW)

**Exhibit:**    One Blueprint Scale Exhibit 1"=200' showing Track A and new Interchange "I/C" point

**Conveyance:**    Point of Interchange between CPW/CUT is moved 1,150 feet east. Agreement cites that it is supplementary to the February 1, 1908 Agreement and that all other aspects remain unchanged.

Andrew A. Nicely
October 30, 2009
Page 5



**Pertinent Provisions Include:**

Track 'A'          Exhibit 'A' blueprint to this Agreement identifies 'End of Track 'A'' at the new 1,150 foot point, which is located 170 feet east of the east line of Section 24.

6.      <u>Agreement dated November 1, 1909 and Recorded with the Cook County, Illinois Recorder of Deeds as Document 5158174</u>

**Parties:** Chicago Title and Trust Company, successor to Chicago Transfer and Clearing Company as Grantor (TRUST) and Corn Products Company as Grantee (Corn)

**Conveyance:** Conveys to Corn right to build a track to connect with CUT, using roughly parallel language as that of February 1908 agreement with CUT and CPW.

**Pertinent Provisions Include:**

Legal Description      Provides Track A metes and bounds legal description which can be traced on Blue Print Exhibit depicting Track A in above November 1, 1909 Agreement.

7.      <u>Agreement dated November 1, 1909 and Recorded with the Cook County, Illinois Recorder of Deeds as Document 5158175</u>

**Parties:** Chicago Title and Trust Company, successor to Chicago Transfer and Clearing Company as First Party (TRUST) and Corn Products Refining Company as successor to Corn Products Manufacturing Company as Second Party (Corn) and Chicago Peoria & Western Railway Company as Railway Company (CPW)

**Exhibit:** Above Agreement dated November 1, 1909 recorded as Document 5158174 among other exhibits

**Conveyance:** Corn assigns to CPW the easement and rights in Track A and CPW has accepted same.

**Pertinent Provisions Include:**

Consent      Trust consents to the above assignment by Corn to CPW.

Andrew A. Nicely
October 30, 2009
Page 6



8.    **Agreement dated April 1, 1910**

**Parties:**    Chicago Union Transfer Railway Company as Transfer Company (CUT) and Chicago, Peoria and Western Railway Company as Peoria Company (CPW)

**Exhibits:**    None

**Conveyance:**    CUT grants CPW rights to use CUT track already constructed from point at or near SE corner of NE 1/4 of Sec 24 thence east to Section 22 and connection with BRC. CPW use is only for freight from Corn plant. A rate is established. CPW commits to build the track 'northeast to point 200 feet west of CTT and to permit CUT and assigns perpetual right to use the track for rate provided. CUT won't handle traffic from Corn.

**Pertinent Provisions Include:**

Track 'A'    Refers to track described in the same way as in Agreement of February1, 1908 above.
When describing CUT track, both for rights for CPW eastward and rights for CUT westward, starts at 'point at corner SE corner of NE ¼' NOT the point of interchange. CPW grants CUT and its assigns perpetual right to use track from end of CUT near southeast corner to west of CTT (Chicago Terminal Railroad) jointly with CPW.

CTT Crossing    CPW has built CTT underpass. Rights granted CUT include CTT underpass.

Long Track East    Refers to it as already built. CUT reserves right to use long track east and to permit any other assignees to do the same.

9.    **Agreement dated May 9, 1910**

**Parties:**    Chicago Union Transfer Railway Company as Transfer Company (CUT) and Chicago, Peoria and Western Railway Company as Peoria Company (CPW) and Chicago Transfer and Clearing

Andrew A. Nicely
October 30, 2009
Page 7



Company as Clearing Company (CTC) and Chicago Title and Trust Company as Trust Company (TRUST)

**Exhibit:** Exhibit 'A' Blueprint, shows Track substantially identical to Track 'A' all in red, and shows Points 'B' and 'A'

**Conveyance:** CPW grants to CUT and its lessees and assigns, for life of the contract, all of its rights CPW holds to possess, use control and operate to the track running from A' to 'B' on the Exhibit, including the crossing beneath CTT {now Baltimore Ohio Chicago Terminal Railroad "BOCT"}. Grant is free and clear of all restrictions touching use of said track which CPW has or may have right to impose, for any and all railroad purposes whatsoever. CUT has exclusive control and operation of said track.

**Pertinent Provisions Include:**

Track 'A'        Point 'A' is a point near east line of Sec 24, as such the 'new' interchange point. Point 'B' is the same westerly end point, 200 feet west of the southwest right of way line of CTT. (Note distance measurements of tangents and arcs correspond to earlier metes and bounds legal descriptions). Point 'B' herein is referred in subsequent agreements as 'H'.

CTT Crossing   Explicitly included in rights granted CUT.

Term             Either CUT or CTC may cancel the Agreement upon 12 months notice whereupon each will be restored to respective rights in existence prior to Agreement. (Note: CTC waived it right to cancel in April 30, 1914 Agreement).

Consent          CUT cannot assign without written consent of CPW. **Trust and CTC explicitly consent to the grant.**

10.    **Lease dated August 9, 1912**

**Parties:** Chicago Union Transfer Railway Company as Lessor (CUT) and Chicago And Western Indiana Railroad Company as Lessee (CWI)

Andrew A. Nicely
October 30, 2009
Page 8



**Exhibits:**   None

**Conveyance:**  CUT leases to CWI the railroad and property of CUT.

**Pertinent Provisions Include:**

Easements    Please see among other pages, Page16.

11.   <u>Indenture dated September 30, 1912</u>

**Parties:**  Chicago Union Transfer Railway Company as Grantor and Bankers Trust Company as Trustee

**Exhibits:**   None

**Conveyance:**  CUT indentures to Bankers Trust Company as collateral for 1912 bond issue to give CWI proceeds to buy CUT.

**Pertinent Provisions Include:**

Easements    Please see among other pages, Page 17.

12.   <u>Indenture dated September 30, 1912</u>

**Parties:**  Chicago Union Transfer Railway Company as Grantor (CUT) Chicago And Western Indiana Railroad Company as Railroad Company (CWI)

**Exhibits:**   None

**Conveyance:**   CUT indentures to CWI the CUT assets and other property.

**Pertinent Provisions Include:**

Easements    Please see among other pages, Page 17.

Andrew A. Nicely
October 30, 2009
Page 9



13.　**Lease dated November 1, 1912**

**Parties:**　Chicago And Western Indiana Railroad Company as Lessor (CWI) and The Belt Railway Company of Chicago as Lessee (BRC) and Bankers Trust Company as Trustee

**Exhibits:**　None

**Conveyance:**　CWI leases to BRC the Belt division of the CWI.

**Pertinent Provisions Include:**

Legal Description　　　　Please see among other pages, Pages 5 and 6.

BRC Purchase Option　　Please see among other pages, Pages 16 and 17.

14.　**Instrument of Further Assurance dated November 18, 1912**

**Parties:**　Chicago And Western Indiana Railroad Company as Railroad Company and Bankers Trust Company as Trustee

**Exhibits:**　None

**Conveyance:**　Relating to November 1, 1912 Lease Railroad Company agrees that it will not exercise option its option to take over unused operating sections without first obtaining consent of Trustee.

15.　**Supplemental Indenture dated December 9, 1912**

**Parties:**　Chicago and Western Indiana Railroad Company as Lessor (CWI) and The Belt Railway Company of Chicago as Lessee (BRC) and Bankers Trust Company as Trustee

**Exhibits:**　None

**Conveyance:**　Provides that Indenture is a supplement to the November 1, 1912 Lease.

Andrew A. Nicely
October 30, 2009
Page 10



Pertinent Provisions Include:

BRC Purchase Option     Provides termination date of twenty one (21) years after the death of the survivor of various named persons.

16.    <u>Agreement dated June 13, 1913</u>

**Parties:** Chicago, Peoria and Western Railway Company as Peoria Company (CPW) and Chicago and Western Indiana Railroad Company as Western Indiana Company (CWI)

**Exhibit:** Exhibit blueprint showing track running from 'A' to 'B' is referred to but NOT attached. Contract of May 9, 1910 referred and made also a part hereof'. (This appears to be the same Exhibit as is in May 9, 1910 Agreement)

**Conveyance:** Per assignment provisions of April 1, 1910 and May 9, 1910 agreements, CPW consents to assignment of CUT's obligations under these agreements, and of CUT obligations under contracts of February 1, 1908, November 1 1909 and April 1, 1910. CPW will carry out obligations imposed on it of May 9, 1910 agreement.

Pertinent Provisions Include:

CUT Agreements     Assigns all of CUT Agreements involving CUT to CWI per CWI acquisition of CUT.

17.    <u>Agreement dated April 30, 1914</u>

**Parties: Parties:** Chicago Title and Trust Company as Trust Company (TRUST) and Chicago Transfer and Clearing Company as Clearing Company (CTC) and Chicago Peoria and Western Railway Company as Peoria Company (CPW) and Chicago and Western Indiana and Belt Railway Company of Chicago as Belt Companies (BRC)

**Parties By Reference:** Corn Products Refining Company (Corn) And Baltimore and Ohio Chicago Terminal Railroad as Terminal Company (BOCT) previously CTT and Chicago Union Transfer Railway Company as Transfer Company (CUT)

Andrew A. Nicely
October 30, 2009
Page 11



**Exhibits:**      Exhibit 'A' and Exhibit 'B', Blueprints are provided with this letter but you already have the April 30, 1914 Agreement so it is not enclosed.

**Conveyance:**    In citations, TRUST in agreement with Corn of 11/1/1909, conveyed Easement to Corn for Track 'A'. BRC will build a subway to connect track between points 'A' and 'D' on Exhibit 'B'. CPW rights to connection in Section 22 and other facilities unimpaired. TRUST conveys to BRC a triangle of land to allow BRC to construct its track shown in red on Exhibit 'A' between letters 'A' and 'D'. BRC grants to TRUST a right of way strip shown in red on Exhibit 'A' to construct the subway.

**Pertinent Provisions Include:**

**Consents:**      Trust, CTC and CPW consent to change of Track A connection and tracks of BRC between points F and D on Exhibit B.

**Use:**           BRC and its assigns have right in perpetuity to use track between points A and H on Exhibit B including BOCT underpass for all traffic including Corn per agreement of May 9, 1910.

**Term:**          CTC waives and cancels its right to terminate May 9, 1910 contract with 12 months notice. All other provisions of the May 9, 1910 Agreement not otherwise modified or cancelled by this Agreement are in full force and effect.

18.     **Agreement dated March 13, 1929**

**Parties:** Chicago and Western Indiana Railroad Co. and Belt Railway Company of Chicago as Belt Companies (BRC) and Chicago Title and Trust Company as Trust Company (TRUST) and Chicago Transfer and Clearing Company as Clearing Company (CTC) and Chicago Peoria and Western Railway Company as Peoria Company (CPW)

**Exhibit:**       Exhibit A Blueprint

Andrew A. Nicely
October 30, 2009
Page 12



**Conveyance:** Green triangle released back to TRUST by BRC, since track relocated away from it. BRC granted right in perpetuity to operate over relocated track.

**Pertinent Provisions Include:**

Track A — Due to Cook County opening a new public highway known as Harlem Avenue, Track A needs to be relocated between points K and D.

Consents — Trust, CTC and CPW consent to the relocation and Belt's rights thereto.

Legal Description — The legal description used to locate point K, which is the starting point of the relocation is identical to legal in the November 1909 Agreement locating the centerline of Track A beginning from the intersection of Archer and Section 24 north line and proceeding easterly and southerly to Point K.

19. **Deed dated August 15, 1962**

**Parties:** Chicago and Western Indiana Railroad Company as Grantor (CWI) and The Belt Railway Company of Chicago as Grantee (BRC)

**Conveyance:** Pursuant to the Option to Purchase as provided for in the November 1, 1912 Lease, CWI conveys to BRC all assets and real estate then currently leased and used by BRC.

20. **Quit Claim Deed and Reservation of Easement dated April 1, 1974 and Recorded as Document No. 22695113 with the Cook County, Illinois Recorder of Deeds**

**Parties:** The Belt Railway Company of Chicago as Grantor (BRC) to Corm, Inc., (CORM) as Grantee

**Exhibits:** Parcel A and Parcel B

**Conveyance:** BRC conveys and quitclaims its interest in Parcels A and B and reserves an easement in perpetuity for the unobstructed use as a railroad right of way.

Andrew A. Nicely
October 30, 2009
Page 13



We believe that a review of the previously provided documents and the enclosed documents will substantiate our client's position in this matter. Please let us know if you should have any questions regarding the enclosures.

Very truly yours,

Thomas I. Matyas

TIM:jlf

Enclosures

cc:    Rex A. Palmer (w/enclosures via messenger)

*Communications with Belt Railway*

# THE BELT RAILWAY COMPANY OF CHICAGO
### 6900 SOUTH CENTRAL AVENUE · BEDFORD PARK, ILLINOIS 60638

**TIMOTHY E. COFFEY**
General Counsel, Secretary & Director Human Resources

Phone: (708) 496-4112
Fax: (708) 496-2608
E-mail: tcoffey@beltrailway.com

August 7, 2006

Mr. Simeon M. Kriesberg
Mayer, Brown, Rowe & Maw, LLP
1909 K Street, N.W.
Washington, D.C. 2006-1101

Re: April 30, 1914 Easement Agreement

Dear Mr. Kriesberg

Enclosed please find a copy of the agreement referenced above.

Please contact me if you have any questions.

Sincerely,

Timothy E. Coffey

Enclosure

**EXHIBIT F**