# EXHIBIT B

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

COULAS VIKING PARTNERS, an Illinois General Partnership,

Plaintiff,

vs.

THE BELT RAILWAY COMPANY OF CHICAGO, an Illinois Corporation,

Defendant.

Case No. 2013-CH-28409

Honorable Mary L. Mikva

FILED - CH
2016 JAN 15 AM 11:22
CLERK OF THE CIRCUIT COURT
CHANCERY DIVISION
DOROTHY BROWN
CLERK

**BELT RAILWAY COMPANY OF CHICAGO'S AMENDED SUPPLEMENTAL AFFIRMATIVE DEFENSE**

NOW COMES the defendant, Belt Railway Company of Chicago ("**Belt**"), by and through its attorneys, and for its Amended Supplemental Affirmative Defense, states as follows:

**Sixth Affirmative Defense**

1. The preemption clause of the Interstate Commerce Commission Termination Act (the "ICCTA"), 49 U.S.C. §§ 10101-11908, provides that the jurisdiction of the Surface Transportation Board's ("**STB**") over "transportation by rail carriers" and "the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State" is exclusive. 49 U.S.C. § 10501(b). The ICCTA can preempt state action in two ways: "(1) categorical, or per se, preemption," and (2) "as applied" preemption. *Union Pac. R.R. Co.*, 647 F.3d at 679 (7th Cir. 2011).

**Categorical Preemption**

2. Categorical preemption occurs in one of two ways, but, for purposes of this action, it is present where a "state or local regulation of matters directly regulated by the Board,"

including the "attempted taking of an active rail line" is at issue. *Union Pac. R.R. Co.*, 647 F.3d at 679 n.3; *Girard v. Youngstown Belt Ry. Co.*, 979 N.E.2d 1273, 1282-83 (Ohio 2012).

3. Belt operates a large intermediate switching terminal railroad based in Chicago.

4. Ingredion Inc., formerly known as Corn Products Manufacturing Company ("**Ingredion**"), is a global provider to the food, beverage, brewing, and pharmaceutical industries as well as to numerous industrial sectors. It uses corn, tapioca, potatoes and other raw materials to manufacture a myriad of ingredients. Ingredion owns and operates a large manufacturing facility in Argo, Illinois located at 6400 South Archer Road.

5. Adjacent to the Ingredion Argo facility is property allegedly owned by the plaintiff, Coulas Viking Partners ("**Viking**").

6. A railroad spur track line (the "**Spur Line**") runs across Viking's property and connects the Ingredion facility with Belt's railway center.

7. In its Second Amended Complaint, Viking asserts that Belt has used the Spur Line for over 100 years without proper easement or other rights. As such, Viking asks the Court for various forms of relief, including to declare that Belt has no rights in the Spur Line, to award damages for trespass, and to eject Belt from the Spur Line.

8. Belt has indeed used the Spur Line for over 100 years and currently uses it to transport corn on rail cars to Ingredion's Argo facility. A significant percentage of Ingredion's corn is shipped from facilities in Wisconsin and passes over the Spur Line in commerce between Wisconsin and Illinois. Approximately 50% of the corn coming into Ingredion's Argo facility is moved by Belt over the Spur Line. The Spur Line is crucial to the movement of corn products to Ingredion's facility as an integral part of Ingredion's business operations and needs.

9. Consequently, the Spur Line is an active rail line used daily to transport goods in interstate commerce. Viking's claims and requested relief from this Court, specifically its request that Belt be ejected, amount to the "attempted taking of an active rail line" and are categorically preempted by the ICCTA.

**As Applied Preemption**

10. If an action is not categorically preempted, it may be preempted "as applied" when the facts show that it "would have the effect of **foreclosing or unduly restricting** a railroad's ability to conduct **any part of its operations** or otherwise **unreasonably burdening** interstate commerce." *City of Milwaukee,* 2013 STB LEXIS 100, at *9-10 (Mar. 20, 2013) (emphasis added).

11. Ingredion is a global manufacturer, and Belt relies on the Spur Line to transport large quantities of products to and from Ingredion's facility. Prohibiting the use of the Spur Line by Belt, as Viking seeks in this lawsuit, will unduly restrict Belt's ability to conduct its operations related to Ingredion, and will harm Belt's business interests, which rely directly on interstate commerce.

12. Further, the Spur Line is crucial to the movement of corn on rail cars into Ingredion's facility as an integral part of Ingredion's business operations and needs.

13. The Spur Line is the only means and route by which Ingredion can feasibly and efficiently get corn to the Argo facility by rail from Wisconsin. Approximately 50% of the corn purchased by Ingredion for the Argo facility is moved by Belt over the Spur Line. A significant percentage of that corn comes from Wisconsin.

14. Discontinuance of the Spur Line would effectively cut off the supply of corn products to the Argo facility from Wisconsin by railway, which is Ingredion's primary means of

getting corn to that facility. The only other means of getting corn from Wisconsin would be to ship the corn in trucks, which is demonstrably infeasible and prohibitively more expensive.

15. Further, the costs of switching transport of corn products to the Argo facility from locations other than Wisconsin would be impractical and infeasible and would have a substantial adverse impact on Ingredion's business.

16. In addition, discontinuance of the Spur Line and of Ingredion's ability to purchase corn from Wisconsin would significantly reduce Ingredion's sales and distribution channel throughout the region.

17. Given its strategic importance to Ingredion and Belt, including its physical location in respect to the loading and unloading zone at the Argo Facility, granting any relief in Viking's favor would be financially prejudicial to Belt, would cause significant disruption to Belt's railroad operations, would be extremely costly to Ingredion and would cause significant disruption to Ingredion's operations.

18. As demonstrated, the forced discontinuance of the Spur Line by any court judgment and the enforcement thereof would unduly restrict both Belt's and Ingredion's ability to conduct their respective operations.

19. Thus, Viking's claims are preempted "as applied" by the ICCTA.

Respectfully submitted,

**THE BELT RAILWAY COMPANY OF CHICAGO**

By: ______________________________
One of its Attorneys

Thomas I. Matyas
Aaron J. Hersh
Locke Lord LLP
111 South Wacker Drive
Chicago, Illinois 60606
(312) 443-0700
E-mail: tom.matyas@lockelord.com
E-mail: aaron.hersh@lockelord.com
Firm No.: 4405

# CERTIFICATE OF SERVICE

I, Thomas I. Matyas, certify that true and correct copies of the foregoing **Belt Railway Company Of Chicago's Amended Supplemental Affirmative Defense** were served via messenger on January 15, 2016, before the hour of 5:00 p.m., upon the below:

John M. Touhy
John C. McIlwee
Baker & Hostetler LLP
191 North Wacker Drive
Suite 3100
Chicago, IL 60606

Rodney Perry
Bryan Cave LLP
161 North Clark Street
Suite 4300
Chicago, IL 60601-3315

Thomas I. Matyas
Aaron J. Hersh
Locke Lord LLP
111 South Wacker Drive
Chicago, Illinois 60606
(312) 443-0700
E-mail: tom.matyas@lockelord.com
E-mail: aaron.hersh@lockelord.com
Firm No.: 44058