**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| COULAS VIKING PARTNERS, an Illinois General Partnership,<br><br>        Plaintiff,<br><br>  v.<br><br>THE BELT RAILWAY COMPANY OF CHICAGO, an Illinois Corporation,<br><br>        Defendant,<br><br>  and<br><br>INGREDION INCORPORATED f/k/a Corn Products Manufacturing Company, a Delaware Corporation,<br><br>        Intervening Defendant. | Case No. 16-cv-3583<br><br>Hon. Sharon Johnson Coleman<br><br>Hon. Sheila Finnegan |

**VIKING PARTNERS' MEMORANDUM
IN SUPPORT OF ITS MOTION TO REMAND**


| | |
|---|---|
| John M. Touhy<br>John C. McIlwee<br>BAKER & HOSTETLER LLP<br>191 North Wacker Drive, Suite 3100<br>Chicago, Illinois 60606<br>T: (312) 416-6200<br>F: (312) 416-6201<br>jtouhy@bakerlaw.com<br>jmcilwee@bakerlaw.com | Joseph Nevi Hosteny, III<br>Niro Law, Ltd.<br>181 West Madison Street<br>Suite 4600<br>Chicago, Illinois 60602<br>T: (312) 236-0733<br>F: (312) 236-3137<br>hosteny@nshn.com |

## Introduction

This Court must have original jurisdiction over this lawsuit to retain it following removal from state court. This Court has no such jurisdiction and must, therefore, remand the case.

In its Notice of Removal, Ingredion represents that this Court possesses federal question jurisdiction over Viking Partners' lawsuit because Viking Partners' claims are preempted by a federal statute, the Interstate Commerce Commission Termination Act ("ICCTA").[1] In its Motion to Dismiss, filed the very next day, Ingredion conversely represents to this Court that exclusive jurisdiction of claims arising under the ICCTA is actually possessed by a federal agency created by the Act – the Surface Transportation Board ("Transportation Board").[2]

Ingredion's two representations cannot both be true. By definition, "exclusive" means that "possession and control" is limited to only one person or entity.

Ingredion cannot explain away this dilemma: this Court cannot have jurisdiction over a lawsuit based on preemption by a federal statute when such jurisdiction over that same statute is possessed exclusively by a federal agency. Without jurisdiction, this Court must remand.

Remand should also be ordered because Ingredion's Notice is defective. The Notice does not comply with the removal statute, as Ingredion does not have the signed consent of the other defendant in this case, as required by Seventh Circuit law and 28 U.S.C. § 1446(b)(2)(A).

## Background

This lawsuit involves disputes concerning real property and an easement agreement between private parties. The property is owned by Viking Partners. The easement agreement,

---

[1] "Because Viking's Complaint seeks to make Belt completely discontinue rail service, abandon, and remove the Spur Line, and also would otherwise unreasonably burden interstate commerce, it should be 'considered from its inception to raise a federal law and therefore arises under federal law' for removal purposes" (Ingredion Incorporated's Notice of Removal at ¶ 17, attached hereto as Exhibit 1).

[2] "[T]he Surface Transportation Board has exclusive jurisdiction over the abandonment of spur tracks under the Interstate Commerce Commission Termination Act of 1995" (Ingredion's Motion to Dismiss at ¶ 1, attached hereto as Exhibit 2).

granted by a prior landowner, was the basis for a single spur-track. Today, the Belt Railway Company of Chicago ("Belt" or "Belt Railway") believes that it has rights under the easement. However, the easement terminated under its own language years ago, and Viking Partners recently withdrew its permission of Belt's use of its land. Belt's continued use is trespass.

Viking Partners filed this lawsuit in the Illinois Circuit Court more than two years ago. Belt was the only defendant. Based on state law concerning construction of written agreements and real property, Viking Partners asked the state court for a declaration that Belt's claimed easement rights were invalid, that Belt was trespassing on Viking Partners' property, that Viking Partners was damaged by the trespass, and that Belt must end its trespass and leave the property.

Those claims have not changed through today. This lawsuit has been actively and contentiously litigated and is still moving forward, despite four unsuccessful motions to dismiss.

In February 2016, a brand new defendant, Ingredion Incorporated, was granted leave to intervene in the state court lawsuit. In March, Ingredion removed the action to this Court, a course that Belt never traveled and from which Belt is now time-barred from pursuing. Circuit Court Judge Mary Mikva had presided over the case for more than two years.[3]

Controlling law from the Seventh Circuit and pertinent decisions from the Transportation Board show that this suit must be resolved in state court, or before the Board itself, but most decidedly not in a federal court. Thus, Viking Partners' motion to remand should be granted.

## Relevant Allegations of the Complaint

Viking Partners owns real property just outside Chicago (Viking Partners' Second Amended Complaint ("Compl.") at ¶¶ 2, 6, attached hereto as Ex. 3). Built on that property is a

---

[3] Ingredion's motive for removing this case was quite apparent to Judge Mikva. She stated that Ingredion's removal was not intended to speed things up or to protect the jurisdiction of a federal agency. Rather, it was done to gain a strategic advantage, protract this litigation, and make it more difficult for Viking Partners to get relief (Hearing Transcript from Ingredion's Motion to Intervene, Dec. 17, 2015, p. 8:20-9:12, attached as Ex. 5). That is not a proper basis for removal.

single spur-track, only 2,500 feet in length, which is used by Belt Railway. It was built based on a written easement, dated 1909, and serves a single customer: a manufacturing plant owned by Ingredion (Compl. ¶¶ 6, 11, Ex. A).

The written easement was entered into between a prior landowner and Ingredion's predecessor, Corn Products Manufacturing Company ("Corn") (Compl. ¶ 17). The easement allowed a train track to be built on the landowner's property and to run a short distance from a railway yard to Corn's plant. Then, as now, Corn was not a railroad or rail carrier (Compl. ¶ 17).

Under the easement's terms, Corn was permitted to assign the easement to a railroad – the Chicago Peoria Western Railway Company ("Chicago Railway"). The easement's express terms limited the assignment to Chicago Railway, and the easement could not be later assigned to another party **unless** the landowner consented (Compl. ¶ 18). Pursuant to the express and unambiguous easement terms, the easement terminated if the landowner did not consent to any later assignment by Chicago Railway to another party (Compl. ¶ 19).

Without the landowner's consent, Chicago Railway tried to assign the easement to Belt's predecessor. By its express terms, the easement terminated. The termination was not cured by subsequent conduct or agreement (Compl. ¶ 2 & 24).

Belt has no rights under the terminated easement. The previous landowner allowed Belt permissive use of the property for a period of time. In September 2009, however, Viking Partners informed Belt by letter that it no longer had permission to use the easement. Ingredion was copied on Viking Partners' letter (Compl. ¶ 31, Ex. I). Belt refused to stop its use of the property, thereby becoming a trespasser (Compl. ¶ 31, Ex. I).

### Procedural Posture

Viking Partners sued Belt Railway in December 2013 in the Circuit Court of Cook County, Illinois. Under state law, Viking Partners sought a declaratory judgment that the

easement had terminated, that Belt does not have any rights under it, that Belt is trespassing and Viking Partners is entitled to trespass damages and ejectment (*See* Compl. ¶¶ 34-53). The Second Amended Complaint asserts the same claims as the original Complaint.

Viking Partners, an Illinois partnership, could not have sued Belt Railway, an Illinois corporation, in federal court. There was neither diversity of citizenship nor a federal question. The Complaint concerned only issues of Illinois law concerning real property and the construction of written agreements. That remains true to this day.

At the time it answered the Complaint and the Second Amended Complaint, Belt did not assert this lawsuit was preempted by a federal statute giving this Court subject matter jurisdiction. Belt did not remove the suit.

More than 9 months after it had answered the Second Amended Complaint, Belt was given leave to file an affirmative defense asserting that this lawsuit is preempted by the ICCTA and the jurisdiction of its regulating federal agency, the Transportation Board (Court Order and Transcript, Dec. 17, 2015; Ex. 4 & 5 attached). Belt did not and has not filed any dispositive motion relating to that affirmative defense.

Two months after Belt's motion was granted, Ingredion appeared in this case for the first time and was granted leave to intervene (Court Order and Transcript, Feb. 23, 2016; Ex. 6 & 7 attached). Ingredion then filed its Notice of Removal on March 23: the last day it could do so.

Ingredion has represented that this Court has jurisdiction because the essence of Viking Partners' state law property claims actually raises federal questions that implicate a federal statute. Ingredion has gone on to say that Viking Partners' claims are actually "regulations" of rail transportation, and are preempted by the exclusive jurisdiction of the Transportation Board. Both the Seventh Circuit and the Transportation Board say otherwise.

4

There are no state, local, or municipal regulations involved in Viking Partners' lawsuit. The easement is a written agreement between two private parties, neither of which was a governmental entity. Viking Partners' lawsuit does not seek to enforce, impair, or override a government regulation. The easement was not created by a government regulation. The Complaint only asks for a state court to declare the rights of private parties under a written agreement that concerns the use of real property. Remand must be granted.

## Argument

I.   **Ingredion's Removal Is Defective And Must Be Remanded.**

Ingredion did not obtain the signed consent of Belt Railway when it filed its Notice of Removal. In failing to do so, it did not comply with the federal removal rules. Its removal is, therefore, irredeemably defective. 28 U.S.C. § 1446(b)(2)(A). Remand to state court is mandatory where there is a defect in the removal process. 28 U.S.C. § 1447(c).

When Ingredion filed its Notice, Belt Railway was a party defendant. Belt did not sign the Notice evidencing its consent, nor did it at any time file any sort of written consent (*See* Notice of Removal, Ex. 1, attached).

The Seventh Circuit has held in no uncertain terms that the removal statute, 28 U.S.C. § 1446, requires that a **notice of removal must be signed** by all defendants:

> Removal was improper. . . . [O]nly one defendant initiated the removal, **yet a notice of removal is effective only if signed by all defendants.** See *Roe v. O'Donohue,* 38 F.3d 298 (7th Cir. 1994). The district court therefore should have remanded this case promptly after its removal.

*State Street Bank & Trust Co. v. Morderosian,* No. 99-4104, 2000 U.S. App. LEXIS 26865, at *3-4 (7th Cir. Oct. 10, 2000) (emphasis added); *see also McMahon v. Bunn-O-Matic Corp.,* 150

5

F.3d 651, 653 (7th Cir. 1998) ("Removal was improper, because only Bunn among the three defendants signed the notice.").[4]

Ingredion may pray for a dispensation from the Seventh Circuit ruling that all defendants must sign a Notice, pointing out that it stated it had obtained Belt's consent in its Notice of Removal (*see* Ex. 1, ¶ 9). Ingredion's representation of Belt's consent without its signature does not comply with the Seventh Circuit's holding as to what is required by the federal rules. *See Roe v. O'Donohue,* 38 F.3d 298, 301 (7th Cir. 1994) (defendant may not give notice of consent on another defendant's behalf), abrogated on other grounds by *Murphy Bros. v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 119 S. Ct. 1322 (7th Cir. 1999). It is the law of this Circuit and of this Court that each defendant must sign the Notice. That did not happen here.

Other federal circuit courts have noted that the Seventh Circuit's holding that a removing defendant cannot "vouch" for another defendant's consent is a more rigorous application of § 1446 than followed by them. *See Griffioen v. Cedar Rapids & Iowa City Ry. Co.,* 785 F.3d 1182 (8th Cir. 2014) (describing the Seventh Circuit's interpretation of § 1446 consent as a "hard-line requirement"). Nonetheless, the more rigorous application of § 1446 is what binds this Court.

This requirement is not pointless formalism. Valid consent is a particularly important requirement where, as here, Belt was originally served with the Complaint in January 2014 and chose not to file a notice of removal. Two years later, Belt's customer Ingredion removed the case. In doing so, Ingredion has taken this lawsuit away from a Court that possesses two years of knowledge and familiarity of its issues. Viking Partners will lose the benefit of that Court's

---

[4] Attached hereto as Exhibit 8 are copies of all cited authority published only on electronic databases, such as Westlaw and Lexis, as well as all cited authority that is unpublished in the West National Reporter System.

labor. In addressing Ingredion's failure to obtain Belt's consent, this Court should bear in mind the Seventh Circuit's observation that strictly enforcing the requirements of § 1446 works:

> [1] to deprive the defendant of the undeserved tactical advantage that he would have if he could wait and see how he was faring in state court before deciding whether to remove the case to another court system; and [2] to prevent the delay and waste of resources involved in starting a case over in a second court after significant proceedings, extending over months or even years, may have taken place in the first court.

*Wilson v. Intercollegiate (Big Ten) Conference Athletic Ass'n*, 668 F.2d 962, 965-67 (7th Cir. 1982). Without Belt's proper consent – shown by signature – this Court must remand.

**II.     This Court Does Not Have Jurisdiction of Viking Partners' Lawsuit.**

Even if the Court could ignore Ingredion's fatal defect in its Notice, removal under 28 U.S.C. § 1441 is only proper if this Court has original jurisdiction over this lawsuit. It is Ingredion's burden to establish that jurisdiction. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, (1987); *Doe v. Allied–Signal, Inc.,* 985 F.2d, 908, 911 (7th Cir. 1993). If a federal court lacks jurisdiction, the case must be remanded. *Adkins v. Illinois Cent. R.R. Co.*, 326 F.3d 828, 835 (7th Cir. 2003). Jurisdictional matters are strictly construed, and all doubts are resolved in favor of remand. *Rawls v. Union Pac. R.R.*, No. 09-cv-1037, 2012 U.S. Dist. LEXIS 94972, at *6 (W.D. Ark. July 10, 2012).

      **a.     There Is No Federal Preemption As Viking Partners' Claims Are Based On A Written Agreement, Not A Government Regulation.**

As there is no federal preemption of Viking Partners' claims here, this Court cannot have jurisdiction. Looking as we must at the face of its well-pleaded complaint (*see infra* at § III), Viking Partners is seeking to enforce its property rights against Belt's infringement of those rights. The rights asserted by Viking Partners are those that stem from the ownership of real property and are centered on a written agreement between private parties that involve the use of

7

that property. Viking Partners' claims do not involve regulations of rail transport and raise no federal question.

The Seventh Circuit has plainly stated that under the ICCTA there can be no federal preemption unless a regulation of rail transport is involved:

> "Federal preemption does not apply to *all* situations where the use of property prevents or unreasonably interferes with railroad transportation; it applies to those situations where a *regulation* prevents or unreasonably interferes with railroad transportation. If a state or local government secures the use of property in a way that affects railroad transportation by contract or other agreement, there is no issue of federal preemption" (emphasis in original).

*Union Pacific R. Co. v. Chicago Transit Authority*, 647 F.3d 675, 682 (7th Cir. 2011).

In *Union Pacific,* there was a written agreement between a governmental entity, the CTA, and a private railroad. *Id.* at 677. That agreement was for the lease of property and did not involve any state or government regulations. *Id.* at 682. Significantly, the Seventh Circuit decided that federal preemption did not apply to that written agreement, even though one of the parties was a government entity. *Id.* Simply put, the agreement did not involve a regulation. *Id.* The Seventh Circuit did go on to find that a condemnation proceeding before the Illinois Commerce Commission filed against the railroad property constituted a regulation and was therefore preempted: "a regulation (instead of an agreement or contract) that prevents or unreasonably interferes with railroad transportation is preempted by the Act." *Id.* No such condemnation action is present here though.

Indeed, Ingredion fails to recognize that *Union Pacific* compels a finding of no-preemption in circumstances such as this case presents. Here, there is only an agreement between private parties and a determination of rights. In any event, Ingredion's reliance on *Union Pacific* to support its argument that it properly removed here is misplaced. Removal was not even discussed by the *Union Pacific* court.

8

### b. The Transportation Board Defers To State Courts On Issues Of State Law.

The Illinois state court is fully empowered and the appropriate venue to resolve Viking Partners' claims. Even though the Transportation Board has exclusive jurisdiction of regulations of rail transport under the ICCTA, the Board has consistently decided that state courts could and should decide issues of state law. *See MVC Transp., LLC--Petition for Declaratory Order*, STB Finance No. 34462, 2004 WL 2619689, at *5 (S.T.B. Oct. 20, 2004) (ruling that questions involving local property law, contract law, and mortgages are for a state court to answer, not the Board); *City of Milwaukie--Petition for Declaratory Order*, STB Finance No. 35625, 2013 WL 1221975, at *5 (S.T.B. Mar. 20, 2013) (state courts had to first resolve the parties' underlying property state law claims before preemption issues could be decided by the Board); *Mid-America Locomotive & Car Repair, Inc.-- Petition for Declaratory Order*, STB Finance No. 34599, 2005 WL 1326958, at *3 (S.T.B. June 6, 2005) ("[I]t is reasonable for the Superior Court to interpret any state or local property interests applicable to this property and to resolve the parties' dispute in the first instance.").

The Transportation Board has even has stated that the ICCTA and federal preemption do not bar state courts from ruling on issues that have an impact on property owned by railroads. *See, e.g., Lincoln Lumber Co. -- Petition for Declaratory Order*, STB Finance No. 34915, 2007 WL 2299735, at *3 (S.T.B. Aug. 10, 2007) (finding that state courts can, and regularly do make determinations as to whether ordinary preemption exists). These decisions compel this Court to remand this lawsuit to state court as it has jurisdiction to resolve state law questions.

### c. The ICCTA Does Not Provide A Basis For Removal To Federal Court.

Apparently, to try and convince this Court that it has jurisdiction when it does not, Ingredion has argued that Viking Partners' state law property and contract claims should be considered in some way, somehow, a "regulation" of rail transport and are, therefore, preempted

9

by the exclusive jurisdiction of the ICCTA. And that, Ingredion concludes, provides a basis for removal. That argument is dead wrong. *See, e.g., Allied Industrial Dev. Corp. v. Ohio Cent. R.R., Inc.*, No. 4:09-cv-1904, 2010 U.S. Dist. LEXIS 23994, *6 (N.D. Ohio Mar. 5, 2010) (ICCTA does not provide for removal of trespass case).

The ICCTA provides jurisdiction to the Transportation Board for all matters involving "the regulation of rail transportation." 49 U.S.C. § 10501(b). It does not state that jurisdiction is also vested in the district court. *See Shupp v. Reading Blue Mountain & N. R.R. Co.*, 850 F. Supp. 2d 490, 501 (M.D. Pa. 2012) (highlighting contradiction in arguing § 10501(b) as granting exclusive jurisdiction in Transportation Board and also a basis for removal; remand ordered). The fallacy of Ingredion's concurrent-but-also-exclusive-jurisdiction argument is poignantly criticized by *Board of Selectmen of Town of Grafton v. Grafton & Upton Railroad Co.*:

> "continued insistence that the exclusive grant of jurisdiction to the Transportation Board under Section 10501(b) provides jurisdiction in this Court is tantamount to a salesperson basing their entire business strategy on advertising the success of their competitor's products; soon it would come as no surprise to find that person out of business")

No. 12-cv-40164, 2013 WL 2285913, at *10 & n. 6 (D. Mass May 22, 2013). Ingredion cannot have it both ways—it intervened in state court based on a preemption defense and it must now permit that state court to determine the merits of that defense. To hold otherwise would write a forum-shopping provision into the ICCTA for which Congress plainly did not intend.

### d. Illinois Courts Have Jurisdiction To Rule On ICCTA Preemption Issues.

Lest Ingredion try to convince this Court that it must rule on preemption issues because no other court can, such a statement is not true. Judge Mikva correctly recognized that she has jurisdiction to render a decision on Ingredion's claim that the ICCTA provides preemption. Judge Mikva stated as much: "I don't know if this [preemption affirmative defense] is a valid

10

defense, but if it is it should be considered here." (*See* Ex. 5, Transcript of Proceedings, 14:19-21, Dec. 17, 2015).

Judge Mikva is correct. Illinois Courts have jurisdiction and rule on claims involving the ICCTA. *See, e.g., Eagle Marine Indus., Inc. v. Union Pac. R. Co.*, 227 Ill. 2d 377, 380, 882 N.E.2d 522, 524 (Ill. 2008) (holding state statute preempted by federal law regulating railroad safety, and declining to reach ICCTA issue as moot, though not for lack of jurisdiction); Illinois First District Appellate Court in *Canadian Nat. Ry. Co. v. City of Des Plaines*, No. 04-2479, 2006 WL 345095, at *3 (Ill. App. Ct. Feb. 10, 2006) (holding that ICCTA preempted municipal ordinance that had "the effect of regulating railroad operations"). Thus, remand is proper.

### III. Application of the "Well-Pleaded Complaint Rule" Evinces No Federal Preemption Jurisdiction.

As can be seen from the plain language of Viking Partners' Complaint, there are no federal questions involved or even implicated. Thus, there can be no subject matter jurisdiction. To determine if there is federal question jurisdiction, courts follow the "well-pleaded complaint rule." *Caterpillar Inc.*, 482 U.S. at 392. That rule holds that jurisdiction exists only when federal issues are apparent on the face of plaintiff's complaint. *Id.* Although a plaintiff may not identify an issue as a federal question, it still must be ascertainable from the complaint itself. *Id.* at 398–99. A defendant cannot create federal jurisdiction "simply by asserting a federal question in his responsive pleading." *Rice v. Panchal*, 65 F.3d 637, 639 (7th Cir. 1995).

The only claims in Viking Partners' Complaint concern state issues of contract and property law. Such claims do not raise questions under the ICCTA and are not preempted.

There are a very small number of instances where a federal statute is so pervasive that it completely displaces state law. In that scenario, only a federal court has jurisdiction: the so-called instances of "complete preemption." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207, 124

11

S. Ct. 2488 (2004). Federal statutes that provide for "complete preemption" are well-recognized, and the ICCTA is not among them:

- National Labor Relations Act ("NLRA");
- Employee Retirement Income Security Act ("ERISA");
- Labor Management Relations Act ("LMRA");
- National Bank Act ("NBA");

*See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 66, 107 S. Ct. 1542, 1547 (1987) (first two bullets); *see also Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 7-11, 123 S. Ct. 2058 (2003) (last two bullets). The Seventh Circuit underscores how narrow the ill-named "complete preemption" doctrine is and highlights that not all federal statutes qualify for "complete preemption." *Adkins*, 326 F.3d at 835 (collecting cases) (holding that state law claims are not completely preempted by the Locomotive Inspection Act); *see also Crosby v. Cooper B-Line, Inc.*, 725 F.3d 795, 800 (7th Cir. 2013).

As held by other Circuits, complete preemption is rare and presumptively non-existent. *Fayard v. N.E. Vehicle Servs., LLC*, 533 F.3d 49, 49 (1st Cir. 2008) (complete preemption is an "extreme and unusual outcome"); *Thomas v. U.S. Bank Nat'l Ass'n ND*, 575 F.3d 794, 797 (8th Cir. 2009) ("Complete preemption, . . . is rare"); *Johnson v. MFA Petroleum Co.*, 701 F.3d 243, 247 (8th Cir. 2012) (state claims not preempted by Petroleum Marketing Practices Act).

For a federal statute to qualify for "complete preemption," it must give a party a cause of action to substitute for its forfeited state law claims. The ICCTA does not provide Viking Partners with a cause of action against Belt. *See Griffioen v. Cedar Rapids & Iowa City Ry. Co.*, 785 F.3d 1182, 1191 (8th Cir. 2015) (ICCTA cause of action limited to resolution of disputes regarding competition, rates, licensing, finance, and the economic relationships between shippers and carriers); *Fayard*, 533 F.3d at 47 ("complete preemption" depends on whether the federal law provides a corresponding cause of action, not merely a remedy); *see also* 49 U.S.C.

12

§ 11704(b) (providing cause of action only for violations of provisions of the ICCTA or its regulations). Thus, the ICCTA does not provide Ingredion with grounds to remove.

### IV. "Ordinary Preemption" Cannot Provide Grounds For Removal.

Failing in its burden to prove there is "complete preemption," Ingredion grasps at "ordinary preemption." "Complete" and "ordinary" preemption are not interchangeable. *Lontz v. Tharp*, 413 F.3d 435, 400 (4th Cir. 2005) ("While these two concepts are linguistically related, they are not as close kin jurisprudentially as their names suggest."). Indeed, while "complete preemption" grants jurisdiction in federal court for removal purposes, "ordinary preemption" does no such thing. Rather, it only gives Belt and Ingredion a defense to Viking Partners' state law claims. It is most assuredly not a basis for removal of this case from state to federal court. *Vorhees v. Naper Aero Club, Inc.*, 272 F.3d 398, 403 (7th Cir. 2001).

To be sure, the Transportation Board has analyzed "ordinary preemption," but only when appropriate issues of state law are resolved prior to its hearing of the matter. *See CSX Transp., Inc. Petition for Declaratory Order*, STB Finance No. 35832, 2016 WL 787578, *2 (S.T.B. Feb. 24, 2009) (denying reconsideration of decision to reject petition for declaratory order of federal preemption where issues of state law were pending in state court and had not yet been decided).

Ingredion attempts to lead this Court astray by suggesting that decisions of the Transportation Board support removal, citing *CSX Transp., Inc. Petition for Declaratory Order*, STB Finance No. 34662, 2005 WL 1024490, at *2-4 (STB May 3, 2005) ("*CSX Transp., Inc. II*"). At no time in that decision did the Board consider removal jurisdiction or "complete preemption" – those issues were not even discussed (or relevant). *Id.* at *2-9. For that matter, *CSX Transp., Inc. II* has nothing in common with the procedure or facts of this case. It should be ignored.

The Fifth Circuit has even stated that removal assertedly based on "complete preemption" cannot be supported by the decision in *CSX Transp., Inc. II*. Indeed, in *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 332-34 (5th Cir. 2008), the court reasoned "the Railroad fails to explain whether and why the fact-intensive inquiry for [ordinary] preemption should be considered as part of a "complete preemption" analysis under § 10501(b)." *Id.* at 333. Similarly, a District Court sitting in Pennsylvania stated:

> If the Court has to make a determination as to the degree to which the railroad is burdened, then, by definition there can be no complete preemption. The ICCTA does not completely preempt state law, and accordingly, does not provide a basis for removal.

*Shupp*, 850 F. Supp. 2d at 500. What *Barrois* and *Shupp* rightly conclude is that "ordinary preemption" does not create jurisdiction in a federal court. Whether "ordinary preemption" is found to exist or not, it does not support removal. Ingredion cannot, therefore, rely on it to meet its burden of proving subject matter jurisdiction.

## V. Ingredion Must Pay Viking Partners' Attorneys' Fees and Costs.

The Court is authorized to and should award Viking Partners its attorneys' fees and costs incurred as a result of this improper removal. *See* 28 U.S.C. § 1447(c) ("An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."). An award for fees turns on whether the removing party has an objectively reasonable basis for removal. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141, 126 S. Ct. 704 (2005). Ingredion's Notice to Remove has no basis as it was filed with a conceded futility: the Transportation Board has exclusive jurisdiction, preventing this Court from having any. Ingredion is also fully aware of the Seventh Circuit's holding in *Union Pacific*—even cites to it in error—but has chosen to ignore its plain application to this case.

14

If Ingredion wanted to send this case to the Transportation Board, it could have asked Judge Mikva to consider such a motion. There was no need for a removal. Rather, Ingredion's strategy was to delay this case and make it more expensive for Viking Partners. Judge Mikva recently recognized and described that strategy:

> I just don't like a new judge having to take over this case after two years of work here. It doesn't make sense to me . . .
>
>      \*  \*  \*
>
> I will say -- and I will say it on the record. I think I've already said it on the record. I still don't like it, but I'm going to do it. And I think you have clarified for me one of the reasons I don't like it. I don't like it because I think it's tactical, and it's tactical in a way that I don't like . . .
>
> It doesn't matter to me legally that this was done by Belt and Ingredion in a way to remove it to federal court, which otherwise would have been untimely.

(Ex. 7, Transcript of Proceedings, 44:18-45:5). Judge Mikva's observations, made with the benefit of presiding over this case for two years, presents this Court with the record it needs to make defendants pay for choosing a dilatory course of action. *See PNC Bank, N.A. v. Spencer*, 763 F.3d 650, 655 (7th Cir. 2014).

To underscore the impropriety of Ingredion's conduct, on March 17, 2016, one of Viking Partners' attorneys spoke with counsel for Ingredion and asked Ingredion not to file a Notice of Removal. Viking Partners' counsel advised that such a removal was not supported by law, but Ingredion forged ahead. To make matters worse, Ingredion has now filed a Motion to Dismiss and a Petition with the Transportation Board. Ingredion has forced Viking Partners to take on the expense of responding to those motions as well as addressing the erroneous removal. The Court is authorized to and should award Viking Partners' fees and costs for preparing its responses to those pleadings as well.

### Conclusion

The Court should order this case remanded and award Viking Partners its fees and costs.

15

Dated: April 22, 2016                          Respectfully submitted,

                                                           COULAS VIKING PARTNERS

                                  By:                /s/ John C. McIlwee
                                                          One of Its Attorneys

John M. Touhy
John C. McIlwee
BAKER & HOSTETLER LLP
191 North Wacker Drive, Suite 3100
Chicago, Illinois 60606
T: (312) 416-6200
F: (312) 416-6201
jtouhy@bakerlaw.com
jmcilwee@bakerlaw.com

Joseph Nevi Hosteny, III
NIRO LAW, LTD.
181 West Madison Street, Suite 4600
Chicago, Illinois 60602
T: (312) 236-0733
F: (312) 236-3137
hosteny@nshn.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

    The undersigned attorney certifies that a true and correct copy of the foregoing Viking Partners' Memorandum in Support of its Motion to Remand was served upon all counsel of record by operation of the CM/ECF filing system for the United States District Court for the Northern District of Illinois on April 22, 2016.

                                              /s/ John C. McIlwee
                                                One of Its Attorneys