UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COULAS VIKING PARTNERS, an Illinois General Partnership | )<br>)<br>) |
| Plaintiff, | ) Case No. 16-cv-3583<br>)<br>) Judge Sharon Johnson Coleman |
| v. | )<br>) |
| THE BELT RAILWAY COMPANY OF CHICAGO, an Illinois Corporation, | )<br>)<br>) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Coulas Viking Partners ("Viking"), brought this action in the Circuit Court of Cook County against the Belt Railway Company of Chicago ("Belt Railway"). Ingredion, Incorporated ("Ingredion") intervened in that action, removed it to this Court, and promptly filed a motion to dismiss [5]. Belt Railway subsequently filed a separate motion for judgment on the pleadings adopting Ingredion's arguments [20], and Viking filed a motion to remand [21]. For the reasons set forth below, Viking's motion to remand [21] is granted, and the defendants' motions [5, 20] are stricken as moot.

**Background**

The following facts are taken from Viking's second amended complaint and are accepted as true for the purpose of ruling on the present motions. In 1909, the Chicago Title and Trust Company entered into an agreement granting the Corn Products Manufacturing Company an easement across its property ("the Property") for the construction, maintenance, and operation of a railroad spur line ("the Spur Line") to serve the Corn Products Manufacturing Company's plant. The agreement authorized the Corn Products Manufacturing Company to assign the easement to the Chicago Peoria Western Railway Company, but stated that the easement would cease if any other

1

assignment occurred without the Chicago Title and Trust Company's consent. In 1912, the easement was assigned to the Chicago and Western Indiana Railroad Company without the consent of the Chicago Title and Trust Company. The Corn Products Manufacturing Company, which is now known as Ingredion, continues to receive railroad service over the Spur Line, which is now operated by the Belt Railway. And the property that the Chicago Title and Trust Company owned, and through which the Spur Line runs, is now owned by the plaintiff, Viking.

**Procedural History**

In 2013, Viking brought a state court action against the Belt Railway seeking declaratory judgment that Viking owns the Property in fee simple, asserting state law claims for trespass and ejectment, and seeking an injunction requiring Belt Railway to stop using the Spur Line and to remove the railroad tracks from the property.

Two years into the state court proceedings, Ingredion intervened in the action and promptly filed a notice of removal to this Court. Although the notice of removal stated that Belt Railway consented to removal, Belt Railway did not sign the notice of removal or separately file a consent to removal. On the same date that it removed this action, Ingredion also filed a motion to dismiss or, alternatively, stay this action [5], which Belt Railway subsequently adopted in a motion for judgment on the pleadings [20]. Viking filed a motion to remand [21], arguing that removal was procedurally and jurisdictionally improper. Thirty-two days after the case was removed, and after the filing of Viking's motion to remand, Belt Railway filed a written consent to removal.

**Discussion**

Once a case has been removed, it may be remanded based on a timely motion to remand alleging defects in the removal procedure or, at any time prior to the entry of a final judgment, on the court's determination that it lacks subject matter jurisdiction over the action. 28 U.S.C. § 1447(c). Here, Viking timely asserts both that Ingredion's removal of this case was procedurally

defective and that this Court does not have subject matter jurisdiction to hear this case. Accordingly, Viking urges this Court to remand the case to the Circuit Court of Cook County.

Viking first contends that Ingredion's removal of this action was procedurally defective because Belt Railway did not sign the Notice of Removal. Viking asserts that binding Seventh Circuit precedent permits removal only when *all* properly joined and served defendants joined in the notice of removal.[1] *See Roe v. O'Donohue*, 38 F.3d 298, 301 (7th Cir. 1994) ("A petition for removal fails unless all defendants join it."), *abrog. on other grounds by Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 119 S.Ct. 1322, 143 L.Ed.2d 448 (1999); *see also Gossmeyer v. McDonald,* 128 F.3d 481, 489 (7th Cir. 1997) (holding that removal was deficient because, although the removing defendant had "noted that all properly served defendants agreed to the removal, . . . not all of these defendants joined in the petition because not all of them signed it.").

It is well-established within this district, however, that defects in removal caused by the failure of all defendants to join in the notice of removal may be cured by the subsequent filing of a written consent to removal. *See Detrick v. Home Depot, U.S.A., Inc.*, No. 13 C 3878, 2013 WL 3836257, at *1 (N.D. Ill. July 23, 2013) (Durkin, J.) (holding that a defendant's untimely, written consent to removal was ultimately sufficient to cure any defect caused by its failure to join in another defendant's notice of removal); *Video and Sound Serv., Inc. v. AMAG Tech., Inc.*, No. 12-cv-7322, 2012 WL 6692165, at *3 (N.D. Ill. Dec. 19, 2012) (Holderman, J.) (recognizing that although a defendant's failure to sign the notice of removal constituted a "defect in removal procedure," that defect could be cured by the subsequent untimely filing of a consent to removal); *but cf. Denton v. Universal Am-Can, Ltd.*, No. 12 C 3150, 2012 WL 3779315, at *3 (N.D. Ill. Aug. 30, 2012) (Darrah, J.)

---

[1] Although it need not resolve this issue, this Court notes that the continued validity of these holdings is called into question by the subsequent 2011 amendments to 28 U.S.C. § 1446, which require that defendants "join in or consent to" removal. Other circuits, in interpreting section 1446, have recognized that separately filed written consents, or even representations by the removing party that the remaining defendants consent to removal, are adequate under the revised statute. *See, e.g., Mayo v. Board of Educ. of Prince George's Cnty.,* 713 F.3d 735, 742 (4th Cir. 2013).

(recognizing that other districts within this Circuit only permit a written consent to cure a defective removal petition if the consent is filed within the 30-day time period for removal). Here, Belt Railway executed a written consent to removal. That consent, although untimely, was adequate to cure any defect in the removal. *See* Detrick, 2013 WL 3836257, at *2.

Viking also contends that removal was improper because this Court does not have subject matter jurisdiction. Because the parties agree that they are not of diverse citizenship, this Court's jurisdiction, if any, must be based on federal question jurisdiction. The presence or absence of federal question jurisdiction is governed by the well-pleaded complaint rule, which requires that a federal question be presented on the face of the plaintiff's properly pleaded complaint. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). A federal defense, even one anticipated in the plaintiff's complaint or that both parties concede is the only question truly at issue, is not an adequate basis for federal question jurisdiction. *Id.* at 393.

The existence of federal preemption, an affirmative defense, is therefore inadequate to satisfy the requirements of the well-pleaded complaint rule. *Id.* at 392–93. An exception, however, exists in instances of complete preemption wherein federal law exclusively occupies an entire field of law. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). Once an area of state law has been completely preempted, any claim purportedly based on that preempted state law is considered to be a federal claim from its inception. *Caterpillar Inc.*, 482 U.S. at 393.

In 1995, Congress enacted the Interstate Commerce Commission Termination Act (ICCTA) and created the Surface Transportation Board (STB) to administer the Act. 49 U.S.C. §§ 10101, 10102(1). That act provides, in pertinent part, that:

> The jurisdiction of the Board over—
> (1) transportation by rail carriers, and the remedies provided
> in this part with respect to rates, classifications, rules
> (including car service, interchange, and other operating rules),
> practices, routes, services, and facilities of such carriers; and

> (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,
>
> is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

49 U.S.C. § 10501(b). Congress further defined "transportation" as encompassing railroad property, facilities, and equipment "related to the movement of passengers or property, or both, by rail, regardless of ownership or an agreement concerning use." 49 U.S.C. § 10102(9). Based on this statutory language, the defendants assert that Viking's claims are completely preempted.

It is widely recognized, however, that judicial actions involving privately bargained rights or generally applicable property law are not completely preempted by the ICCTA. *See Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 807 (5th Cir. 2011) (distinguishing between a completely preempted claim based on a statute targeting railroads' conduct and "state property laws and rules of civil procedure that on their face 'have nothing to do with railroad[s] . . .'"); *Franks Inv. Co. LLC v. Union Pac. R. Co.*, 593 F.3d 404, 411 (5th Cir. 2010) (recognizing that a state possessory action invoking only state property laws was not completely preempted because the laws being applied did not seek to regulate the operations of rail transportation). Moreover, the STB has expressly indicated that disputes of state law such as this one are properly resolved by the courts. *PCS Phosphate Co., Inc. v. Norfolk S. Corp.,* 559 F.3d 212, 220 (4th Cir. 2009).

This conclusion is supported by Seventh Circuit precedent. In *Union Pacific v. Chicago Transit Authority*, the Chicago Transit Authority (CTA) sought to condemn a portion of the Union Pacific's right of way that the CTA had previously leased for many years. 647 F.3d 675 (7th Cir. 2011). The Seventh Circuit applied the preemption analysis adopted by the STB, which distinguishes between categorical preemption (which occurs when a state or local action is preempted on its face without consideration of its context or rationale) and as applied preemption (which considers whether the

regulation would have the effect of preventing or unreasonably interfering with railroad transportation). The Seventh Circuit held that categorical preemption did not apply because "condemnation is a peculiar type of regulation, one specifically limited in scope to the ownership or use of one particular piece of property." *Id.* at 679. A condemnation, the court noted, is not a rule of general applicability that could be subject to a facial preemption analysis because each instance of condemnation necessarily varies with the facts of the case and the specific property subject to the condemnation. *Id.* at 679–680. Precisely the same considerations apply to the ejectment claim and injunctive relief that the plaintiff seeks here, because the preemption analysis hinges on the facts of this case and the specific nature of the disputed property. Thus, although the relief that Viking seeks is likely preempted based on the facts of this particular case,[2] it is not completely preempted and therefore is not subject to federal jurisdiction. *See Shupp v. Reading Blue Mountain,* 850 F. Supp. 2d 490, 500 (M.D. Pa. 2012) ("Having to engage in an 'as-applied' analysis is inherently antithetical to the concept of complete preemption."). Accordingly, this matter must be remanded to the state court.

Viking also moves for an award of the attorney's fees and costs that it incurred as a result of Ingredion's removal of this action. Under 28 U.S.C. § 1447(c), an order remanding a case may require payment of just costs and actual expenses incurred as a result of the removal. Ordinarily, such an award may occur "only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005). Although this Court acknowledges Viking's assertion that Ingredion and Belt Railway are acting in bad faith to prolong this action at Viking's expense, there is no evidence in the record to support such a claim. Nor, based on its analysis of the issues, does this Court believe that it was

---

[2] It is well-established that active railroads within the STB's jurisdiction cannot be evicted from their right of way. *See Pinelawn Cemetery—Petition for Declaratory Order*, STB Docket No. FD 35468, 2015 WL 1813674 (April 20, 2015) (recognizing that, even if a state court found that a railroad's lease had expired, the railroad could not be evicted so long as the disputed property fell within the STB's jurisdiction).

6

objectively unreasonable for Ingredion to seek to remove this action. Accordingly, Viking's request for an award of fees and costs is denied.

**Conclusion**

For the foregoing reasons, plaintiff's motion for remand is granted [21] and this case is remanded to the Circuit Court of Cook County. Ingredion's motion to dismiss [5] and Belt Railway's motion for judgment on the pleadings [20] are accordingly stricken as moot.

SO ORDERED.

_____
Sharon Johnson Coleman
United States District Court Judge

DATED: July 19, 2016